# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| | : | |
| IN RE: UNIVERSITY OF MIAMI COVID-19 | : | Case No.: 20-60851-CIV-SINGHAL |
| TUITION AND FEE REFUND LITIGATION | : | |
| | : | (JURY TRIAL DEMANDED) |
| | : | |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Valeria Dimitryuk, Adelaide Dixon, Julie Gold, and Michael Weiss

("Plaintiffs") by and through their undersigned counsel, bring this action against the University

of Miami ("Defendant" or the "University") on behalf of themselves and all others similarly

situated, and make the following allegations based upon information, attorney investigation and

belief, and upon Plaintiffs' own knowledge.

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this case as a result of Defendant's decision not to issue

appropriate refunds for the Spring 2020 semester after cancelling in-person classes and changing

all classes to an online/remote format, closing most campus buildings, and requiring all students

who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.      This decision deprived Plaintiffs and the other members of the Classes from

recognizing the benefits of on-campus enrollment, access to campus facilities, student activities,

and other benefits and services in exchange for which they had already paid fees and tuition.

3.      Defendant has either refused to provide reimbursement for the tuition, fees, and

other costs that Defendant failed to provide during the Spring 2020 semester, or has provided

inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiffs and

members of the Classes for their loss. They have lost the benefit of their bargain and/or suffered

out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

4.     This action seeks refunds of the amount Plaintiffs and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

5.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

6.     University of Miami is an institution of higher learning located in Coral Gables, Florida.

7.     Upon information and belief, Defendant has an estimated endowment of approximately $997.4 million and approximately 17,000 enrolled students during the 2019–2020 academic year. That same year, the University collected $560.4 million in tuition and fees (net), a $25.6 million increase from the prior fiscal year. The University also reported total operating revenues reaching $3.574 billion.

8.     Over the last decade, the University has engaged in multiple record breaking campaigns, including the "Momentum" campaign, which amassed "$1.4 billion in donations at a time when no Florida school had ever before topped the billion-dollar mark"[1] and the "Momentum2" campaign, through which the University surpassed $1.6 billion in donations.[2] And more recently in FY2019, Miami "raised $321.8 million—more than $139 million over the previous year, and endowment giving increased by 62 percent, making [FY2019] one of the best fundraising years in the University's 94-year history."[3]

---

[1] Michael Vasquez, *UM Kicks off $1.6 billion campaign,* The Miami Herald (2012).
[2] https://news.miami.edu/stories/2015/05/um-surpasses-1.6-billion-m2-campaign-goal.html.
[3] https://president.miami.edu/_assets/pdf/presidents-report-2019.pdf.

9.     Moreover, upon information and belief, Defendant has allocated more than $8.1 million of federal stimulus funds under the CARES Act. The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

10.     Plaintiff Valeria Dimitryuk is an individual and a resident and citizen of the state of Florida and was a student enrolled at University of Miami during the Spring 2020 term.

11.     Plaintiff Adelaide Dixon is an individual and a resident and citizen of the state of South Carolina and was a student enrolled at University of Miami during the Spring 2020 term.

12.     Plaintiff Julie Gold is an individual and a resident and citizen of the state of New York and was a student enrolled at the University of Miami during the Spring 2020 term.

13.     Plaintiff Michael Weiss is an individual and a resident and citizen of the commonwealth of Virginia and his son was a student enrolled at University of Miami during the Spring 2020 term.

14.     Plaintiffs and/or their children are in good financial standing at the University, having paid in whole or in combination tuition, fees, costs, and/or charges assessed and demanded by Defendant for the Spring 2020 term.

15.     While Plaintiffs and/or their children could have obtained their degrees online, they specifically selected an in-person, in-class experience for the variety of educational experiences and benefits that only an in-person program can deliver. Indeed, Plaintiffs selected the University of Miami for its numerous amenities, its campus, as well as the educational opportunities it would provide them.

## JURISDICTION AND VENUE

16.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

17.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class Member is of diverse citizenship from one Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

18.     This Court has personal jurisdiction over Defendant because Defendant conducts business in Florida and has sufficient minimum contacts with Florida.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

20.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

21.     Plaintiffs Dimitryuk and Dixon were enrolled as students for the Spring 2020 academic semester at Defendant's institution. Plaintiff Gold paid tuition and fees for her son who was a student for the Spring 2020 academic semester at University of Miami Los Angeles, in Burbank, California. Plaintiff Weiss paid tuition and fees for his son to attend the University of Miami campus in Coral Gables, Florida.

22.      As a precondition for enrollment, Plaintiffs were required to—and did pay—substantial tuition for the Spring 2020 semester either out-of-pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

23.     There are hundreds, if not thousands, of institutions of higher learning in this country.

24.     Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.

25.     Defendant's institution offers both in-person, hands-on programs, and a few fully online distance-learning programs, which it markets and prices as separate and distinct products.

26.     Plaintiffs and members of the proposed Tuition Class did not choose to attend or enroll their children at another institution of higher learning, or to seek an online degree, but instead chose Defendant's institution and specifically chose the on-campus program and enrolled on that basis.

27.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

28.     Defendant promotes itself as "one of the best research universities in the Americas," supporting students with "mission-driven discoveries with cutting-edge technology, state-of-the-art equipment, and award-winning faculty."[4]

29.     Defendant notes that "[t]here is no substitute for the experience of visiting the University of Miami campus," encouraging applicants to "[s]ee first-hand why students chose to live and learn on our Miami campus."[5]

30.     As reflected in its requirement that non-local first-year students live in University housing, Defendant recognizes the importance of living on (or near) campus and the experiences that result from such in-person interactions, noting "[l]iving on campus is a chance to live and interact with culturally diverse students and receive support and enhanced learning opportunities through live-in faculty and student affairs staff."[6]

---

[4] https://admissions.miami.edu/undergraduate/index.html.
[5] https://admissions.miami.edu/undergraduate/student-life/visit/index.html.
[6] https://admissions.miami.edu/undergraduate/about/FAQs/student-life/index.html.

31.     To that end, Defendant's Housing & Residential Life team "focuses its efforts on developing students both personally and professionally throughout their time on campus. By living on campus, students are footsteps away from a variety of academic, cultural and social experiences that are hard to get elsewhere."[7] Thus, Defendant explains that "[a]s a result of the residential experience, resident students can expect to "[e]ngage and connect with the campus community," "[l]earn ways to take care of yourself," "discovery and discuss new ideas outside of the classroom"—including through interaction "with faculty and University leaders in the residential setting." And in doing so, students develop "skills to thrive beyond UM" such as by "[d]iscovering tools and strategies promoting the advancement of interpersonal skills" and "[r]ecognizing the resources and behaviors that promote academic, intrapersonal and professional success."[8]

32.     Further, the University provides top facilities for student use.

33.     Such facilities include, but are not limited to, its library system which "rank[s] among the top research libraries in North America with a combined collection of over 4 million volumes, with over 100,000 current electronic and print serials"[9] and which also contain extensive group study spaces, the Herbert Wellness Center, "[d]esigned to be one of the finest centers in the nation for recreational sports, fitness, and wellness education programs . . . ."[10]

34.     Moreover, Defendant boasts the extensive, hands-on research and educational experiences to students. Miami offers a number of research centers and institutes which "reflect our broad interests and expertise and our commitment to raising awareness, finding solutions,

---

[7] https://hrl.studentaffairs.miami.edu/living-on-campus/what-to-expect/index.html.
[8] Id.
[9] https://welcome.miami.edu/academics/libraries/index.html.
[10] https://wellness.studentaffairs.miami.edu/facilities/index.html.

and creating connections through hands-on learning, scholarly research, and community outreach and education."[11] Similarly, its business school describes "[t]he School's innovative undergraduate business curriculum takes on a global perspective with hands-on real-world learning from day one, providing students with the knowledge and skills they need to succeed in today's increasingly competitive economy."[12]

35.     Accordingly, when individuals pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

  a. Face-to-face interaction with professors, mentors, and peers;

  b. Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

  c. Student governance and student unions;

  d. Extra-curricular activities, groups, intramurals, etc.;

  e. Student art, cultures, and other activities;

  f. Exposure to community members of diverse backgrounds, cultures, and schools of thought;

  g. Social development and independence;

  h. Hands-on learning and experimentation; and

  i. Networking and mentorship opportunities.

---

[11] https://welcome.miami.edu/research/index.html.
[12] https://www.bus.miami.edu/academic-programs/undergraduate-business-education/index.html.

36.     To obtain such educational opportunities and activities, Plaintiffs and Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

37.     For the Spring 2020 term, Defendant assessed the following tuition and fee charges per semester to full-time undergraduates: $25,200 in tuition, $167 as a student activity fee, $99 as an athletic fee, $156 for wellness center fee, $186.00 for student health and counseling centers fee, and $166 for a student center fee. Furthermore, on-campus housing and meal charges reach $7,734 per semester. Defendant assessed graduate students at the rate of $2,100 per credit hour, along with various other fees depending on the course of study and course load.

38.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

39.     Plaintiffs' education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

40.     When this happened, Plaintiffs and their children were forced from campus and deprived of the benefit of their bargain for which they had paid, and in exchange for which Defendant had accepted tuition as set forth more fully above.

41.     In addition to tuition, Defendant charges certain mandatory fees, including but not limited to:

- Student Activity Fee

- Athletic Fee

- Wellness Center Fee

- Student Health and Counseling Centers Fee

- Student Center Complex Fee

42.     The Student Activity Fee is charged to all full-time students.[13]

43.     The Athletic Fee is charged to all full-time undergraduate students.[14]

44.     The Wellness Center Fee is charged to all full-time students.[15]

45.     The Student Health and Counseling Centers Fee is charged to all students (full and part-time).[16]

46.     The Student Center Complex Fee is charged to all full and part-time undergraduate students, as well as, all full-time graduate, Rosenstiel graduate, and medical graduate students.[17]

47.     Plaintiffs were required to—and did—pay all mandatory fees associated with their Spring 2020 enrollment.

48.     In addition to the broad-based mandatory fees described above, Defendant charges a myriad of other program or specific fees.

49.     The University states that the Student Activity Fee is "used to support the availability of a wide range of programs, services, lectures, speakers, facilities and organizations including club sports, major events (e.g. Homecoming), and various forms of entertainment, concerts, student media, and student government."[18]

---

[13] bulletin.miami.edu/general-university-information/university-policies/financial-payment-policies/tuition-fees/.
[14] Id.
[15] Id.
[16] Id.
[17] Id.
[18] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.

50.     The University states that the Athletic Fee "allows students to attend assigned home games for football, baseball, basketball and intercollegiate contests. Free transportation is included for events held at the Hard Rock Stadium."[19]

51.     The University states that the Wellness Center Fee "allows students to use the 138,000 square-foot center which includes a 20,000 square-foot fitness room; a functional training studio, five racquetball courts; two squash courts; indoor lap pool; two dry saunas; a whirlpool spa; two gymnasiums for basketball, volleyball, badminton floor hockey and soccer; indoor jogging track; four multipurpose rooms; juice bar; and locker rooms. The facility also includes a fitness lab, instructional kitchen, classrooms, and a conference room. Additionally, four outdoor basketball/volleyball courts and five intramural fields are available for use. The fee includes access to group exercise classes like Zumba and cardio kickboxing."[20]

52.     The University states that the Health and Counseling Center Fee "allows for primary medical care physician/nursing services, 24 hour on-call services, health counseling and community outreach/public health initiatives at the Student Health Service, and individual and group counseling, substance abuse and other addiction programs, crisis intervention, case management, and mental health education and other outreach programs at the Counseling Center."[21]

53.     The University states that the Student Center Complex Fee "provides funding for construction, operation, maintenance and programs of the Student Center Complex, consisting of

---

html.

[19] Id.

[20] Id.

[21] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.html.

the Whitten University Center, the Shalala Student Center, the UC Pool, Rock, 'U' statue, UC

Patio, and Stage."[22]

54.     As a result of the actions and announcements of Defendant during the Spring

2020 term, Plaintiffs and members of the Fees Class (defined below) no longer had the benefit of

the services for which these fees were paid. For example, the Wellness Center was closed and

athletics were cancelled, student events and activities were cancelled, student organizations were

no longer operational, and students who moved home no longer had the need for or access to the

Health and Counseling Center.

55.     At Defendant's request and direction, certain Plaintiffs and members of the

Classes moved out of on-campus housing and lost access to any campus facilities and services

thereon throughout the remainder of the Spring 2020 term.

## FACTUAL ALLEGATIONS

56.     Plaintiffs incorporate by reference all preceding allegations as though fully set

forth herein.

57.     On December 31, 2019, governmental entities in Wuhan, China confirmed that

health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days

later, researchers in China identified a new virus that had infected dozens of people in Asia,

subsequently identified and referred to as the novel coronavirus, or COVID-19.

58.     By January 21, 2020, officials in the United States were confirming the first

known domestic infections of COVID-19.

---

[22] Id.

59.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

60.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

61.     Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 13, 2020.[23]

62.     Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about May 6, 2020.[24]

63.     Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 114 days.

64.     However, on March 12, 2020, Defendant announced that Spring break was to be extended through March 22, 2020 and classes were to resume on March 23, 2020 but strictly in online/remote/distance learning until at least April 4, 2020.[25]

65.     Further, on March 17, 2020, Defendant announced that students would be receiving education strictly in online/remote/distance platforms and that students living on campus were encouraged to leave beginning on March 25, 2020.[26] Also on March 17, 2020, Defendant closed most on-campus facilities, including the Wellness Center, pool, and university libraries.[27]

---

[23] https://www.youcalenders.com/calendar-printable/University-Of-Miami-Academic-Calendar-Spring-2020.jpg
[24] https://www.youcalenders.com/calendar-printable/University-Of-Miami-Academic-Calendar-Spring-2020.jpg
[25] https://messages.miami.edu/messages/2020/03/03-12-20-coronavirus.html.
[26] https://messages.miami.edu/messages/2020/03/03-17-20-coronavirus.html.
[27] *Id.*

66.     On or about March 25, 2020, the City of Coral Gables issued a "safer at home" order requiring residents and businesses to restrict non-essential activities.[28]

67.     Also at this time, Defendant began to close on-campus student facilities such as libraries and other buildings and non-essential offices.

68.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiffs and Class Members.

69.     Almost immediately, students began demanding refunds for the fees and charges demanded in this action.

70.     Indeed, the students at Defendant's institution started a petition for the refund of the fees and charges demanded in this action.[29]

71.     Upon information and belief, this petition has nearly 2,000 signatures.[30]

72.     As highlighted in The Miami Hurricane student newspaper editorial titled "UM's response to COVID-19: The good, the bad and the uncertain" the student editorial board opined: "We doubt this will actually happen, but it would be nice to receive some kind of tuition refund. UM has not yet spoken on this matter, even though student group chats have been buzzing about it. We understand that this is a strange situation, but we didn't pay $25,000 this semester for online classes, which, to be frank, are just not as valuable as in-person classes. Plus, we're not using any of UM's on-campus facilities or resources, further devaluing our experience. We should pay for what we're getting, not what we wish we were getting."[31]

---

[28] https://coronavirus.miami.edu/updates-and-messages/index.html.
[29] https://www.change.org/p/university-of-miami-students-deserve-a-partial-refund-for-tuition-required-associated-fees-for-the-spring-2020-semester.
[30] Id.
[31] https://www.themiamihurricane.com/2020/04/03/ums-response-to-covid-19-the-good-the-bad-and-the-uncertain/.

73.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 12, 2020 deprived Plaintiffs and other members of the Classes from access to campus facilities and in-person instruction for approximately 48% of the semester for which they had contracted.

74.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiffs and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

75.     These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that has already been paid.

76.     Likewise, Plaintiffs and members of the proposed Fees Class were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services, room and board, and other programs.

## CLASS ACTION ALLEGATIONS

77.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

78.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

14

**The On-Campus Housing and Meals Class:**

All people who paid the costs of on-campus housing and meals for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

79.     Excluded from the Classes is the University of Miami, and any of its respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

80.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

81.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

82.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiffs are informed and believe that there are thousands of members of the Classes, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

83.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

(c)     Whether Defendant breached its contracts with Plaintiffs and members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)     Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiffs and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)     Whether Defendant breached its contracts with Plaintiffs and members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

(f)     Whether Defendant was unjustly enriched by retaining fees of Plaintiffs and members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g)     Whether Defendant breached its contracts with Plaintiffs and members of the On-Campus Housing and Meals Class by retaining fees without providing the housing, meals, and other amenities the fees were contracted

16

to cover;

(h)     Whether Defendant was unjustly enriched by retaining fees of Plaintiffs and members of the On-Campus Housing and Meals Class without providing the meals, housing and other amenities the fees were intended to cover;

(i)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(j)     Whether members of the Classes are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(k)     The amount and nature of relief to be awarded to Plaintiffs and the other members of the Classes.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

84.     Plaintiffs' claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

85.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of other members of the Classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex litigation and Plaintiffs intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

86.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

87.     Even if members of the Classes could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

88.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

89.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiffs and Members of the Tuition Class)

90.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

91.     Plaintiffs bring this count on behalf of themselves and members of the Tuition Class.

92.     Plaintiffs and members of the Tuition Class entered into contracts with Defendant which provided that Plaintiffs and members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including but not limited to, access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

93.     The rights and privileges of student status that comprise the contractual terms are set forth by Defendant through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications.

94.     One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities within Miami.

95.     Defendant does not deny the advantages of its location. See e.g. ¶ 86.

96.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the University as opposed to other institutions of higher learning.

19

97.     Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

98.     Defendant specifically markets certain classes and degree programs as being offered on a fully online basis.

99.     Indeed, Defendant dedicates an entire section of its website to these programs, known as "UOnline" which can be accessed at https://uonline.miami.edu.

100.    Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

101.    For example, Defendant boasts "With an average student-faculty ratio of 12:1, our classes are more focused and personal than classes at larger universities."[32]

102.    When prospective students visit Defendant's "Student Life" website, they are immediately greeted with a picture of the Donna E. Shalala Student Center.[33]



The 120,000-square-foot Donna E. Shalala Student Center is where students go to eat, study, attend events, meet up with friends, make things happen, and just relax.

---

[32] https://welcome.miami.edu/academics/index.html.
[33] https://welcome.miami.edu/student-life/index.html

103.     Just below this grand image, Defendant specifically markets to prospective students its on-campus product, emphasizing its location and amenities.[34]

Set one foot on campus and you'll feel it—a vibe that celebrates life, learning, and daily activities that are anything but routine. Capitalizing on its glorious weather, national reputation, and location at the crossroads of the Americas, the University of Miami offers students unparalleled academic support, enrichment activities galore, sports and cultural offerings, wellness and fitness programs, and endless opportunities to explore, engage, and better the community and the world. Visit the Division of Student Affairs page.

104.     Defendant supplies prospective students further benefits of its on-campus product such as palm trees, beautiful views, study lounges, and transportation.[35]



---



105.    On Defendant's "About" page, Defendant boasts "our campus community is a plurality of races, ethnicities, customs, and faiths located within one of the most dynamic and multicultural cities in the world."36

106.    Although Defendant has locked the fact page for Spring 2020, upon inspection of the Fall 2019 Fact Page, and upon information and belief, Defendant markets the facilities at the School of Architecture "include studio workspace for each student within both the historic studio buildings and the new Thomas P. Murphy Design studio building, an architecture reference library linked to university-wide resources, a computer laboratory, a digital fabrication

---

36 https://welcome.miami.edu/student-life/index.html.

laboratory, a model shop. RAD-UM research lab providing expertise for project-based research on the spatial ramifications of embedded technology, the new B.E. & W.R. Miller Build Lab, and the Jorge M. Perez Architecture Center housing lecture and exhibit facilities."[37]

107.    Additionally, upon information and belief, the College of Arts and Sciences provides "numerous community outreach activities, including student musical theatre products at the Jerry Herman Ring Theatre and Alvin Sherman Family Stage; student, faculty, and visit artist exhibitions in the Wynwood Gallery in the design district of downtown Miami; lectures and faculty-curated exhibitions at the Lowe Art Museum . . . volunteer activities in the public schools, hospitals and community clinics for developmentally disabled children; technology workshops for Miami-Dade public school teachers sponsored by the Department of Modern Languages and Literatures Laboratory; summer art camps for children ages 5-12 through the Department of Theatre Arts and the Lowe Art Museum . . . ."[38]

108.    Moreover, upon information and belief, The Miami Herbert Business School offers undergraduate students the opportunity for "*hands on experience* in a variety of programs ranging from the Student Managed Investment Fund to the Entrepreneurship Consulting Program. . ."[39]

109.    Further, upon information and belief, The College of Engineering "promotes pro-active and hands-on learning environments. *Students and faculty have access to state-of-the-art facilities* such as the Johnson & Johnson 3D Printing Center of Excellence Collaborative Laboratory (J&J Collab)."[40]

---

[37] Id.
[38] https://www.irsa.miami.edu/_assets/pdf/Documents/fbfa2019.pdf.
[39] https://www.irsa.miami.edu/_assets/pdf/Documents/fbfa2019.pdf.
[40] Id.

110.    When prospective students go to Defendant's "Undergraduate Admission" website, they are met with more information about Defendant's on-campus product.41

111.    Here, Defendant offers prospective students the opportunities for internships by virtue of its Miami location:[42]

Location, location, location. 'Canes benefit from real-world experience in government, non-profit organizations, multinational corporations, and everything in between. Our students intern at U.S. Southern Command, Royal Caribbean, International Rescue Committee, and World Fuel Services, just to name a few. Not your thing? American Airlines, NBC Universal, Hilton International, Novartis Pharmaceuticals, and many more are also located in our own backyard.

112.    Upon information and belief, there were no references or disclaimers on any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 29, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[43]

113.    In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model. This is evident from the fact that the University had to extend spring break for an additional week while its professors hurriedly and ineffectively scrambled to make the switch.

114.    Those prospective students who were interested in enrolling at the University after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

---

[41] https://admissions.miami.edu/undergraduate/academics/experiential-learning/index.html.
[42] Id.
[43] January 29, 2020 is the approximate date that students were permitted to withdraw from the University for the Spring 2020 term and receive a full tuition refund.

115.    When a student is offered admission to the University, that student receives a number of further communications and has a number of additional interactions with Defendant.

116.    Admitted students are invited to attend a "Future 'Cane Day" (which is hosted on Defendant's campus) where Defendant again attempts to sell such students to accept their offers of admission by highlighting the University's location and the many benefits of being on campus.

117.    During this time, the students also receive an "Admitted Student Handbook" from their respective school or program.

118.    When students officially accept their offers, they are flooded with a number of other communications from the school.

119.    Once students make it through orientation [and for returning students], it comes time to register for classes. This is another area where Defendant specifically emphasizes the distinction between its in-person and online class offerings through the academic catalogs and course listings on the website.

120.    Each of Defendant's academic programs is listed separately on the University's student financial services website with the specific tuition and fees charged for the specific program.

121.    That website can be found at https://m.canelink.miami.edu/.

122.    Each online program is specifically delineated as such, with the in-person programs not so delineated.

123.    When students log onto "Cane Link" registration portal to select their in-person classes, each class is listed not only by description, but also by meeting time and physical classroom location.

124.    For example:[44]

| Class Details | |
|---|---|
| **Instructor(s)** | Malancha Sarkar |
| **Meets** | TuTh 12:30PM - 1:45PM |
| **Dates** | 01/13/2020 - 05/06/2020 |
| **Room** | Cox Science 145 |
| **Instruction Mode** | In Person |
| **Campus** | Gables Campus |
| **Location** | Coral Gables |
| **Components** | Lecture Required |

125.    As shown in the screenshot above, Defendant's registration portal specifically lists each course's "Instruction Mode," which includes an option for "In Person."

126.    Upon registration, students in many of Defendant's on-campus schools and programs were subject to strict personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendant's requirement and the student's acceptance of the requirement that such students physically attend such classes on campus.

127.    That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidence by the parties' prior course of conduct.

128.    Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction.

---

[44] https://m.canelink.miami.edu/app/catalog/classsection/MIAMI/2201/2724.

129.    Each day for the weeks and months leading up to March 7, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.[45]

130.    Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

131.    Each day for the weeks and months prior to announced closures, students had access to the full campus.

132.    Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

133.    This distinction is highlighted further by Defendant's own transfer credit policy.

134.    For example, for the Miami Herbert Business School, "Online math classes are not transferable to UM without prior approval of the math department."[46]

135.    Defendant's transfer credit policy clearly articulates Defendant's position: that online classes are not analogous to University of Miami classes, because University of Miami classes are taught face-to-face in person in a classroom setting.

---

[45] March 7, 2020 was the date on which Spring Recess began. https:// youcalendars.com/calendar -printable/University-Of-Miami-Academic-Calendar-Spring-2020.jpg.
[46] https://admissions.miami.edu/undergraduate/application-process/admission-requirements/ transfer/index.html.

136.   Based on this mutual assent, Plaintiffs and members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out-of-pocket or by using student loan financing, or otherwise.

137.   However, the University breached the contract with Plaintiffs and members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

138.   This cause of action does not seek to allege "academic malpractice."

139.   Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one being live, in-person, on-campus education, with its featured ancillary and related services, and the other being online distance education.

140.   Plaintiffs and members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

141.   However, after accepting such consideration from Plaintiffs and members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiffs and members of the Tuition Class of the benefit of the bargain for which they had paid.

142.   Defendant retained tuition monies paid by Plaintiffs and members of the Tuition Class, without providing them the full benefit of their bargain.

143.   Plaintiffs and members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

144.     As a direct and proximate result of Defendant's breach, Plaintiffs and members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

### (Plaintiffs and Members of the Tuition Class)

145.     Plaintiffs reallege and incorporate by reference paragraphs 1–89 as though fully set forth herein.

146.     Plaintiffs bring this claim on behalf of themselves and on behalf of members of the Tuition Class.

147.     Plaintiffs plead this Count in the alternative to the First Collective Cause of Action above.

148.     Plaintiffs and Tuition Class Members entered into an implied contract by accepting Defendant's offer to register for on-campus classes and use of Defendant's facilities in accordance with Defendant's usual and customary practice of providing on-campus courses.

149.     Under the implied contract, Plaintiffs and Tuition Class Members registered for on-campus courses.

150.     It was the reasonable expectation of Plaintiffs and Tuition Class Members that Defendant would provide them with on-campus—as opposed to online—classes and instruction and use of Defendant's facilities as mutually agreed and intended in accordance with

Defendant's publications including, brochures, advertisements, and other promotional materials and Defendant's usual and customary practice of providing on-campus courses.

151.    Plaintiffs and Tuition Class Members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

152.    Plaintiffs and Tuition Class Members have fulfilled all expectations of their mutual agreement, by registering and paying for on-campus courses and access to on-campus facilities and services for the Spring 2020 semester. Plaintiffs and Tuition Class Members have paid Defendant for all Spring 2020 semester financial assessments.

153.    However, Defendant breached the implied contract, failed to provide those on-campus classes and/or services, and has not otherwise performed as obligated and required by the implied-in-fact contract between Plaintiffs and Tuition Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Tuition Class Members' ability to access university facilities, and/or evicted Plaintiffs and Tuition Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiffs and Tuition Class Members from the benefit of their bargains with Defendant.

154.    Plaintiffs and Tuition Class Members have been damaged as a direct and proximate result of Defendant's breach. The online classes provided by Defendant are objectively different from and less valuable than the on-campus classes for which the parties entered into an implied contract.

155.    Plaintiffs and Tuition Class Members are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds. As a direct and proximate result of Defendant's breach, Plaintiffs and members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include

disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they entered into an implied contract

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiffs and Members of the Tuition Class)

156.    Plaintiffs incorporate by reference paragraphs 1–89 as though fully set forth herein.

157.    Plaintiffs bring this count on behalf of themselves and members of the Tuition Class.

158.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

159.    Plaintiffs and Tuition Class Members paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

160.    Plaintiffs and Tuition Class Members conferred a benefit on Defendant when they paid this tuition.

161.    Defendant has realized this benefit by accepting such payment.

162.    However, Plaintiffs and Tuition Class Members did not receive the full benefit of their bargain.

163.    Instead, Plaintiffs and Tuition Class Members conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they

were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

164.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

165.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

166.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

167.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus. But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

168.    Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiffs and Tuition Class Members.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

### (Plaintiffs and Other Members of the Fees Class)

169.    Plaintiffs incorporate by reference paragraphs 1–89 as though fully set forth herein.

170.    Plaintiffs bring this count on behalf of themselves and members of the Fees Class.

171.    In addition to tuition, Defendant charges a number of mandatory fees.

172.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee for which students pay.

173.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

174.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

175.    As such, it is axiomatic that the monies Plaintiffs and Fees Class Members paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits, and programs for which the fees were described and billed.

176.    By way of example, The University states that the Student Activity Fee is "used to support the availability of a wide range of programs, services, lectures, speakers, facilities and organizations including club sports, major events (e.g. Homecoming), and various forms of entertainment, concerts, student media, and student government."[47]

177.    The University states that the Athletic Fee "allows students to attend assigned home games for football, baseball, basketball and intercollegiate contests. Free transportation is included for events held at the Hard Rock Stadium."[48]

178.    The University states that the Wellness Center Fee "allows students to use the 138,000 square-foot center which includes a 20,000 square-foot fitness room; a functional training studio, five racquetball courts; two squash courts; indoor lap pool; two dry saunas; a whirlpool spa; two gymnasiums for basketball, volleyball, badminton floor hockey and soccer; indoor jogging track; four multipurpose rooms; juice bar; and locker rooms. The facility also

---

[47] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.html.
[48] Id.

33

includes a fitness lab, instructional kitchen, classrooms, and a conference room. Additionally, four outdoor basketball/volleyball courts and five intramural fields are available for use. The fee includes access to group exercise classes like Zumba and cardio kickboxing."[49]

179.    The University states that the Health and Counseling Center Fee "allows for primary medical care physician/nursing services, 24 hour on-call services, health counseling and community outreach/public health initiatives at the Student Health Service, and individual and group counseling, substance abuse and other addiction programs, crisis intervention, case management, and mental health education and other outreach programs at the Counseling Center."[50]

180.    The University states that the Student Center Complex Fee "provides funding for construction, operation, maintenance and programs of the Student Center Complex, consisting of the Whitten University Center, the Shalala Student Center, the UC Pool, Rock, 'U' statue, UC Patio, and Stage."[51]

181.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiffs, including the Fees Class, and Defendant, which provided that Plaintiffs and Fees Class Members would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, access, benefits, and/or programs related to those fees, as promised.

---

[49] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.html.
[50] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.html.
[51] Id.

182.     It is undisputed that Defendant did not provide student activities, on-campus printing facilities, access to recreational facilities, access to campus-based information technology resources, access to any Health Facilities for a portion of the Spring 2020 term.

183.     Plaintiffs and Fees Class Members fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out-of-pocket or by using student loan financing, or otherwise.

184.     However, Defendant breached the contract with Plaintiffs and Class Members by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

185.     Defendant has acknowledged such breach and has already refunded or offered to refund some of these fees.

186.     Although Defendant's admissions serve as a starting point for the analysis and support of this cause of action, there are yet other fees that Defendant has refused and continues to refuse to refund in full.

187.     By retaining fees paid by Plaintiffs and Fees Class Members, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

188.     Plaintiffs and Fees Class Members have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

189.     As a direct and proximate result of Defendant's breach, Plaintiffs and Fees Class Members are legally and equitably entitled to damages, to be decided by the trier of fact in this

action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

### FOR A FIFTH COLLECTIVE CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT

#### (Plaintiffs and Members of the Fee Class)

190.    Plaintiffs reallege and incorporate by reference paragraphs 1–89 as though fully set forth herein.

191.    Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the Fees Class.

192.    Plaintiffs plead this Count in the alternative to the Fourth Cause of Action above.

193.    In addition to tuition, Defendant charges a number of mandatory fees.

194.    Plaintiffs and Fees Class Members entered into an implied contract by accepting Defendant's offer to register for on-campus classes and use of Defendant's facilities in accordance with Defendant's usual and customary practice of providing on-campus courses and access to facilities.

195.    Under the implied contract, Plaintiffs and Fees Class Members registered for an on-campus experience.

196.    It was the reasonable expectation of Plaintiffs and Fees Class Members that Defendant would provide them with an on-campus—as opposed to online—classes and instruction and use of Defendant's facilities as mutually agreed and intended in accordance with Defendant's publications including, brochures, advertisements, and other promotional materials and Defendant's usual and customary practice of providing on-campus courses and facilities.

197.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee for which students pay.

198.     Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

199.     Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

200.     As such, the monies Plaintiffs and Fees Class Members paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits, and programs for which the fees were described and billed.

201.     By way of example, The University states that the Student Activity Fee is "used to support the availability of a wide range of programs, services, lectures, speakers, facilities and organizations including club sports, major events (e.g. Homecoming), and various forms of entertainment, concerts, student media, and student government."[52]

202.     The University states that the Athletic Fee "allows students to attend assigned home games for football, baseball, basketball and intercollegiate contests. Free transportation is included for events held at the Hard Rock Stadium."[53]

203.     The University states that the Wellness Center Fee "allows students to use the 138,000 square-foot center which includes a 20,000 square-foot fitness room; a functional training studio, five racquetball courts; two squash courts; indoor lap pool; two dry saunas; a whirlpool spa; two gymnasiums for basketball, volleyball, badminton floor hockey and soccer; indoor jogging track; four multipurpose rooms; juice bar; and locker rooms. The facility also includes a fitness lab, instructional kitchen, classrooms, and a conference room. Additionally,

---

[52] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.html.
[53] Id.

four outdoor basketball/volleyball courts and five intramural fields are available for use. The fee includes access to group exercise classes like Zumba and cardio kickboxing."[54]

204.    The University states that the Health and Counseling Center Fee "allows for primary medical care physician/nursing services, 24 hour on-call services, health counseling and community outreach/public health initiatives at the Student Health Service, and individual and group counseling, substance abuse and other addiction programs, crisis intervention, case management, and mental health education and other outreach programs at the Counseling Center."[55]

205.    The University states that the Student Center Complex Fee "provides funding for construction, operation, maintenance and programs of the Student Center Complex, consisting of the Whitten University Center, the Shalala Student Center, the UC Pool, Rock, 'U' statue, UC Patio, and Stage."[56]

206.    Plaintiffs and Fees Class Members accepted and intended to use and enjoy Defendant's on-campus facilities including the services, access, benefits and/or programs related to the fees they paid.

207.    It is undisputed that Defendant did not provide student activities, on-campus printing facilities, access to recreational facilities, access to campus-based information technology resources, access to any Health Facilities for a portion of the Spring 2020 term.

---

[54] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.html.
[55] https://osas.miami.edu/tuition-and-fees/tuition-and-fees-information/fee-descriptions/index.html.
[56] Id.

208.    Plaintiffs and Fess Class Members have fulfilled all expectations of their mutual agreement, when they paid these fees for the Spring 2020 semester, either by paying out-of-pocket or by using student loan financing, or otherwise.

209.    However, Defendant breached the implied contract, failed to provide those on-campus classes and services, and has not otherwise performed as obligated and required by the implied-in-fact contract between Plaintiffs and Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Fees Class Members' ability to access university facilities, cancelled student events and activities, and/or evicted Plaintiffs and Fees Class Members from campus housing. In doing so, Defendant has deprived and continues to deprive Plaintiffs and Fess Class Members from the benefit of their bargains with Defendant.

210.    Defendant has acknowledged such breach and has already refunded or offered to refund some of these fees.

211.    Although Defendant's admissions serve as a starting point for the analysis and support this cause of action, there are yet other fees that Defendant has refused and continues to refuse to refund in full.

212.    Plaintiffs and Fees Class Members have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits, and/or programs the fees were intended to cover for which the parties entered into an implied contract.

213.    As a direct and proximate result of Defendant's breach, Plaintiffs and Fees Class Members are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiffs and Members of the Fees Class)

214.    Plaintiffs incorporate by reference paragraphs 1–89 as though fully set forth herein.

215.    Plaintiffs bring this count on behalf of themselves and members of the Fees Class.

216.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Fourth Cause of Action above.

217.    Defendant has received a benefit at the expense of Plaintiffs and Fees Class Members to which it is not entitled.

218.    Plaintiffs and Fees Class Members paid substantial student fees for on-campus services, access, benefits, and/or programs and did not receive the full benefit of the bargain.

219.    Plaintiffs and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

220.    Defendant realized this benefit by accepting such payment.

221.    Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits, and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

222.    Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiffs and Fees Class Members.

223.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

40

## FOR A SEVENTH COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

**(Plaintiffs and Members of the On-Campus Housing and Meals Class)**

224.    Plaintiffs reallege and incorporate by reference paragraphs 1–89 as though fully set forth herein.

225.    Certain Plaintiffs bring this count on behalf of themselves and members of the On-Campus Housing and Meals Class.

226.    Certain Plaintiffs and the On-Campus Housing and Meals Class Members entered into contracts with the University which provided that certain Plaintiffs and On-Campus Housing and Meals Class Members would pay certain fees for or on behalf of students and, in exchange, the University would provide on-campus housing and meals to those students.

227.    As part of this contract, the University was to provide housing and meals for a specified period of time, and students were to retain the right of quiet enjoyment in such housing so long as they complied with the University's student housing policies and procedures.

228.    Certain Plaintiffs and On-Campus Housing and Meals Class Members fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out-of-pocket or by using student loan financing, or otherwise.

229.    The University breached the contract with Plaintiffs and On-Campus Housing Class Members by moving all classes for the Spring 2020 semester to online distance learning platforms, and requiring students to move out of on-campus housing facilities, and cancelling the offering of meals to students.

230.    The University retained fees paid by certain Plaintiffs and other members of the On-Campus Housing and Meals Class, without providing them the full benefit of their bargain.

231.    Certain Plaintiffs and On-Campus Housing and Meals Class Members have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the housing that the room fees were intended to cover, and the meals that the meal fees were intended to cover.

232.    As a direct and proximate result of Defendant's breach, Plaintiffs and On-Campus Housing and Meals Class Members are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

**FOR AN EIGHTH COLLECTIVE CAUSE OF ACTION
ENRICHMENT WITHOUT CAUSE**

**(Plaintiffs and Members of the On-Campus Housing and Meals Class)**

233.    Plaintiffs reallege and incorporate by reference paragraphs 1–89 as though fully set forth herein.

234.    Certain Plaintiffs brings this count on behalf of themselves and members of the On-Campus Housing and Meals Class.

235.    This claim is pled in the alternative to the contract-based claim set forth in the Seventh Cause of Action above to the extent it is determined a contract does not exist or otherwise apply.

236.    The University has received a benefit at the expense of Plaintiffs and members of the On-Campus Housing and Meals Class to which it is not entitled.

237.    Certain Plaintiffs and On-Campus Housing and Meals Class Members paid substantial room fees for the right to occupy on-campus housing and receive meals and did not receive the full benefit of the bargain.

238.   Certain Plaintiffs and On-Campus Housing and Meals Class Members conferred this benefit on Defendant when they paid the fees.

239.   Defendant has realized this benefit by accepting such payment.

240.   Defendant has retained this benefit, even though Defendant has failed to provide the meals, housing, and other amenities for which the fees were collected, making Defendant's retention unjust under the circumstances.

241.   Equity and good conscience require that the University return a pro-rata portion of the monies paid in fees to Plaintiff and On-Campus Housing and Meals Class Members.

242.   Defendant should be required to disgorge this unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendant as follows:

A.   Certifying the Classes as proposed herein and designating Plaintiffs as Class representatives;

B.   Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.   Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D.   Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E.   Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

F.   Scheduling a trial by jury in this action;

G.   Awarding Plaintiffs' reasonable attorney's fees, costs and expenses, as permitted by law;

H.    Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.    Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated September 1, 2020

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
      Sarah N. Westcot

Sarah N. Westcot (FBN: 1018272)
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Andrew J. Obergfell (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aobergfell@bursor.com

**ANASTOPOULO LAW FIRM, LLC**
Roy T. Willey IV (admitted *pro hac vice*)
Eric M. Poulin (admitted *pro hac vice*)
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email: roy@akinlawfirm.com

**GROSSMAN ROTH YAFFA COHEN, P.A.**
Stuart Z. Grossman (FBN:156113)
2525 Ponce De Leon, Suite 1150
Coral Gables, FL 33134
Telephone: (305) 442-8666
Email: szg@grossmanroth.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Daniel J. Kurowski (admitted *pro hac vice*)
Whitney K. Siehl (admitted *pro hac vice*)
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone:(708) 628-4949
Email: dank@hbsslaw.com
Email: whitneys@hbsslaw.com

Joshua H. Eggnatz (FBN: 0067926)
Michael J. Pascucci (FBN: 0083397)
7450 Griffin Rd, Ste. 230
Davie, FL 33314
Telephone: (954) 889-3359
Fax: (954) 889-5913
Email: JEggnatz@JusticeEarned.com
Email: Mpascucci@JusticeEarned.com

Jeffrey K. Brown (*pro hac vice* forthcoming)
Michael A. Tompkins (*pro hac vice* forthcoming)
Brett R. Cohen (*pro hac vice* forthcoming)
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
Email: jbrownl@leedsbrownlaw.com
Email: mtompkins@leedsbrownlaw.com
Email: bcohen@leedsbrownlaw.com

*Attorneys for Plaintiffs*