UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED ACTION

CASE NO. 20-60851-CIV-SINGHAL
CASE NO. 20-22207-CIV-SINGHAL
CASE NO. 20-22316-CIV-SINGHAL
CASE NO. 20-22594-CIV-SINGHAL

IN RE: UNIVERSITY OF MIAMI COVID-19
TUITION AND FEE REFUND LITIGATION
_____/

**DEFENDANT'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT WITH PREJUDICE**

Defendant, University of Miami (the "University"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss the Consolidated Class Action Complaint (the "Complaint") (D.E. 49) filed by Plaintiffs, Valeria Dimitryuk ("Dimitryuk"), Michael Weiss ("Weiss"), Julie Gold ("Gold") and Adelaide Dixon ("Dixon"). In this lawsuit, Plaintiffs attempt to assert a series of claims arising out of the closure of the University's physical facilities in response to the COVID-19 pandemic and its completion of the Spring 2020 Semester in a virtual/remote learning environment.

Prior to consolidation on August 5, 2020 (D.E. 40), Plaintiffs filed five separate/individual complaints asserting similar claims. The University moved to dismiss each one, setting forth numerous arguments why Plaintiffs had not stated and could not state any claim. Notwithstanding, the Complaint repeats the same technical and substantive errors of its predecessors. It remains an impermissible shotgun pleading, and it still does not plausibly allege any claim. None of Plaintiffs' claims is factually or legally viable under Florida law. Because Plaintiffs already have had multiple opportunities to state their claims and it is clear that they cannot do so, the University respectfully requests that this lawsuit be dismissed with prejudice.

## INTRODUCTION

In their 45-page, 242-paragraph Complaint, Plaintiffs attempt to hold the University liable under various theories for the University's decision to transition its services online in response to a global pandemic - - a decision that Plaintiffs themselves characterize as "justified." (Compl. ¶ 68.) Applicable law does not support any of the claims Plaintiffs have chosen to assert. The allegations pertinent to this Motion are summarized below.

## I.    General Allegations of the Complaint

Plaintiffs allege that, during the Spring 2020 Semester, Dimitryuk and Dixon were enrolled as students at the University, and Gold and Weiss were parents of students enrolled at the University. (Compl. ¶¶ 10-13, 21.)[1] Plaintiffs allege that, "[a]s a precondition of enrollment," they "were required to—and did pay—substantial tuition for the Spring 2020 Semester." (*Id*. ¶ 22.) Plaintiffs allege that the University assessed various fees for the Spring 2020 Semester, which "Plaintiffs were required to—and did—pay." (*Id*. ¶¶ 37, 41-53.) Plaintiffs allege that they "are in good financial standing at the University, having paid in whole or in combination tuition, fees, costs, and/or charges assessed and demanded by [the University]." (*Id*. ¶ 14.)

In connection with their registration at the University for the Spring 2020 Semester, the student Plaintiffs (Dimitryuk and Dixon) and the children of the parent Plaintiffs (Tyler Brand and Christopher Weiss) were required to—and did—agree to the University's Financial Responsibility Statement, a copy of which is attached hereto as Exhibit A.[2] In pertinent part, the Financial Responsibility Statement provides as follows:

---

[1]    Due to a typographical error, Plaintiffs mistakenly allege that Gold was both a student and the parent of a student at the University. (*Compare* Compl. ¶ 12 *with* Compl. ¶ 21.) However, as alleged in Gold's individual complaint (Case No. 1:20-cv-22316, D.E. 1 at ¶ 9), Gold is the mother of a University student (Tyler Brand).

[2]    "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings,*

**Terms and Conditions for Course Enrollment/Registration**

I understand that by enrolling for classes at the University of Miami I am responsible to pay any and all tuition, fees and/or any other miscellaneous charges assessed to my student account. I agree to and accept financial responsibility for all charges on my student account. I promise to pay the University of Miami the full amount of my student account balance when due.

**Campus Tuition and Fees**

I understand that activity on my account such as dropping or adding classes, adding a meal plan or a housing assignment to my account, among other activity, may create a new balance on my student account. I understand that new charges are due upon receipt and must be paid immediately. I understand that failure to pay these charges promptly may lead to the cancellation of my classes. I also understand that I am responsible for any charges remaining on my student account in the event my classes are cancelled.

(Ex. A.) Finally, the Financial Responsibility Statement provides, "By clicking on the 'I Agree' button, I confirm that I have read and agree to the University of Miami's Financial Responsibility Statement." (*Id*.)[3] Nothing in the Financial Responsibility Statement requires the provision of in-

---

*Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (quoting *McClure v. Oasis Outsourcing II, Inc.*, 674 Fed. Appx. 873, 875 (11th Cir. 2016)). *See also Sec. & Exch. Comm'n v. Shrewder*, No. 06-80126-CIV, 2006 WL 8433635, at *3 n.3 (S.D. Fla. July 26, 2006) ("In a motion to dismiss, where a complaint is expressly linked to - and admittedly dependent on - undisputedly authentic documents, these documents may be effectively merged into the pleadings, and the Court can review them in making its decision.").

      Here, it cannot reasonably be disputed that the Financial Responsibility Statement is central to Plaintiffs' claims seeking reimbursement of tuition and fees. Further, Plaintiffs themselves allege that they entered into contracts with the University, the terms of which are "set forth by [the University] through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications." (*Id*. ¶¶ 92-93.) This University website excerpt/publication sets forth the essential terms of the pertinent contract. Finally, there is no dispute regarding the authenticity of the document. In seeking transfer of Dixon's case from the District Court of South Carolina to this Court, the University filed a Consent Motion to Transfer, which expressly cited to the Financial Responsibility Statement and which Motion was expressly was approved and adopted by Dixon. (S.C. Case No. 2:20-cv-01348-BHH and S.D. Fla. Case No. 1:20-cv-22594, D.E. 6 ¶ 3, D.E. 7.)

[3]     Dixon agreed to the Financial Responsibility Statement on November 7, 2019. Dimitryuk agreed to the Financial Responsibility Statement on November 9, 2019. Christopher Weiss (the

person education. (*See id.*) To the contrary, the Financial Responsibility Statement makes clear that the obligation to pay is absolute and independent of the nature/modality of classes. (*See id.*)

Plaintiffs allege that the Spring 2020 Semester was "scheduled and contracted" to run from January 13 through May 6, 2020. (*Id.* ¶¶ 61-63.) However, in response to the COVID-19 pandemic, the University was forced to close certain on-campus facilities and transition its instruction to "online/remote/distance learning." (*Id.* ¶¶ 39, 64-67.) Plaintiffs concede that "the reasons for such closures are justified." (*Id.* ¶ 68.) Nevertheless, Plaintiffs allege that the foregoing changes differed from the services "for which they had contracted." (*Id.* ¶ 73.) Plaintiffs further allege that what they received was "just not as valuable as in-person classes." (*Id.* ¶¶ 72, 83(b), (c).)

In describing the timeline of these events, Plaintiffs purport to cite to various University webpages dedicated to providing up-to-date information to students and faculty regarding the COVID-19 pandemic, and Plaintiffs provide the relevant web addresses. (*See, e.g.*, *id.* ¶¶ 64-67, n. 25-27.) Copies of the relevant webpages are attached hereto as Exhibits B through E.[4]

On March 12, 2020, the University advised that, following Spring Break, classes would resume on March 23 but "strictly in online/remote/distance learning environments through at least Saturday, April 4." (Compl. ¶ 64; Ex. B.) On March 17, 2020, the University advised that classes

---

son of Weiss) agreed to the Financial Responsibility Statement on November 11, 2019. Tyler Brand (the son of Gold) agreed to the Financial Responsibility Statement on December 17, 2019.

[4]       Because Plaintiffs expressly cited to these websites in their Complaint, these websites have been incorporated into the Complaint by reference, and the Court may consider them in considering this Motion. *See Parekh v. CBS Corp.*, No. 19-11794, 2020 WL 3400679, at *1 n.1 (11th Cir. June 19, 2020) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). *See also Blanco Rosales v. Swacina*, No. 07-20064-CIV, 2007 WL 9709773, at *1 (S.D. Fla. May 23, 2007) ("The Court may refer to the USCIS Website in considering the motion to dismiss, because Plaintiffs reference the website in their Complaint and rely on it to support their allegations.").

Materials attached to or incorporated into a complaint by reference control over contradictory allegations. *Bellamy v. First Class Mgmt. LLC*, No. 2:15-CV-431-FTM-29CM, 2017 WL 3336450, at *2 (M.D. Fla. Aug. 4, 2017) (where "the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls") (quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).

would resume on March 23 but in online/remote/distance format for the remainder of the semester. (Compl. ¶ 65; Ex. C.) On or about March 25, 2020, the City of Coral Gables issued a "Safer at Home" Order, which "requir[ed] residents and businesses to restrict non-essential activities." (Compl. ¶ 66.) Plaintiffs allege that, "at this time," the University "began to close on-campus student facilities such as libraries and other buildings and non-essential offices." (*Id*. ¶ 67.)

With respect to on-campus housing, the University advised on March 17, 2020, that there would be a "partial closing of on-campus housing" beginning March 25, 2020. (Ex. C.) Students who were "unable to return home" or who could not "find housing elsewhere" would be permitted to remain in on-campus housing. (*Id*.) "Room and board costs will be pro-rated for the remainder of the semester for all students leaving campus." (*Id*.) On March 25, 2020, the University provided additional information on these fees and services. (Ex. D.) The University advised that, for all students who no longer resided on campus, the University would issue pro-rated refunds of housing, meals and parking, calculated from March 25, 2020. (*Id*.) On April 29, 2020, the University provided an additional update, stating that the "University will refund student accounts with a prorated amount for any Spring 2020 fees and services that cannot be provided in an online or virtual format. This includes housing, dining, parking, student center, wellness center, health and counseling, student activities, and athletics fees." (Ex. E.) In fact, as discussed *infra* and as Plaintiffs themselves acknowledge, the University *already* has provided prorated refunds for all fees identified by Plaintiffs in the Complaint. (*See* Exs. C-E; Compl. ¶¶ 185, 211.)

## II.    Plaintiffs' Claims

Plaintiffs incorporate the aforementioned general allegations into their Class Action Allegations. (Compl. ¶ 77.) In their Class Actions Allegations, Plaintiffs allege that their claims are suited for class treatment and seek to represent three classes: a Tuition Class, a Fees Class and

an On-Campus Housing and Meals Class. (*Id.* ¶ 78.) However, Plaintiffs fail to identify which Plaintiffs would be potential members or representatives of each class. (*See id.* ¶¶ 77-89.)[5]

Based on the foregoing allegations - - which expressly are incorporated into all claims - - Plaintiffs attempt to assert eight claims against the University. Counts I, II and III are brought on behalf of the proposed Tuition Class. (*Id.* ¶¶ 90-168.) Counts IV, V and VI are brought on behalf of the proposed Fees Class. (*Id.* ¶¶ 169-223.) Counts VII and VIII are brought on behalf of the proposed On-Campus Housing and Meals Class. (*Id.* ¶¶ 224-242.)

A.      **Tuition Claims**

In Count I, Plaintiffs attempt to assert a claim for breach of contract premised on the tuition they paid and the educational services they were provided. (*Id.* ¶¶ 90-144.) Plaintiffs allege that they entered into contracts with the University, the terms of which are "set forth by [the University] through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications." (*Id.* ¶¶ 92-93.) Plaintiffs allege the University "offered to provide live, in-person education, together with a full on-campus experience and members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester." (*Id.* ¶ 132.) However, Plaintiffs fail to identify <u>any</u> contractual provision to that effect. Nevertheless, Plaintiffs allege that the University "breached the contract with Plaintiffs and members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly." (*Id.* ¶ 137.) Further, Plaintiffs allege that the transition to remote learning was "hurriedly and ineffectively" implemented. (*Id.* ¶ 113.)

---

[5]      Said another way, Plaintiffs simply group themselves together as representatives of each class but fail to allege, for example, that any or all of them paid for on-campus housing or meal plans.

In Count II, Plaintiffs attempt to assert a claim for breach of implied contract premised on the same content alleged in Count I: the tuition they paid and the educational services they were provided. (*Id.* ¶¶ 145-157.) Although purportedly pled "in the alternative" to Count I, this claim incorporates the Complaint's general allegations, which allege the existence of an express contract. (*Id.* ¶ 145, which incorporates ¶¶ 63, 73.) Again, Plaintiffs allege that they contracted with the University to provide in-person services, and the University breached that contract because the virtual/remote services provided by the University were "different from and less valuable than" in-person services. (*Id.* ¶¶ 152-154.)

In Count III, Plaintiffs attempt to assert a claim for unjust enrichment premised on the same content alleged in Counts I and II: the tuition they paid and the educational services they received. (*Id.* ¶¶ 156-168.) Although purportedly pled "in the alternative" to Count I, this claim incorporates the Complaint's general allegations, which allege the existence of an express contract. (*Id.* ¶ 156, which incorporates ¶¶ 63, 73.) Plaintiffs allege that they conferred a benefit on the University and were provided with a "materially different" and "cheaper product." (*Id.* ¶¶ 163-167.)

**B.      Fees Claims**

In Count IV, Plaintiffs attempt to assert a claim for breach of contract premised on the various student fees that were paid. (*Id.* ¶¶ 169-189.) Plaintiffs admit (as Exhibit E makes clear) that the University "has already refunded or offered to refund some of these fees." (*Id.* ¶ 185.) Plaintiffs then allege, in conclusory fashion, that there are "other fees that [the University] has refused and continues to refuse to refund in full." (*Id.* ¶ 186.) Other than these conclusory allegations, Plaintiffs fail to identify what fees (or portions thereof) the University has not refunded or has refused to refund.

That is because the University already has issued prorated refunds of those fees. (*See* Ex. E.) In fact, in some of their prior pleadings, Plaintiffs admitted that all fees had been refunded, prorated to the date when on-campus facilities were closed. (*See, e.g.*, Case No. 1:20-cv-22207, D.E. 1, Weiss Compl. ¶ 54) (the University "has agreed to provide some refunds to certain fees and services, i.e., housing, dining, parking, student center, wellness center, health and counseling, student activities, and athletics fees, with such fees prorated to March 25, 2020, when classes transitioned to an online format"). In other words, Plaintiffs are claiming prorated refunds of fees that *already* have been refunded.

In Count V, Plaintiffs attempt to assert a claim for breach of implied contract premised on the same subject matter at issue in Count IV: various student fees that were paid. (*Id*. ¶¶ 190-213.) Although purportedly pled "in the alternative" to Count IV, this claim incorporates the Complaint's general allegations, which allege the existence of an express contract. (*Id*. ¶ 190, which incorporates ¶¶ 63, 73.) As in Count IV, Plaintiffs admit (as Exhibit E makes clear) that the University "has already refunded or offered to refund some of these fees." (*Id*. ¶ 210.) Plaintiffs then allege, in conclusory fashion, that there are "other fees that [the University] has refused and continues to refuse to refund in full." (*Id*. ¶ 211.) However, other than these conclusory allegations, Plaintiffs fail to identify what fees (or portions thereof) the University has not refunded or has refused to refund.

In Count VI, Plaintiffs attempt to assert a claim for unjust enrichment premised on the same subject matter at issue in Counts IV and V: various student fees that were paid. (*Id*. ¶¶ 214-223.) Although purportedly pled "in the alternative" to Count IV, this claim incorporates the Complaint's general allegations, which allege the existence of an express contract. (*Id*. ¶ 214, which incorporates ¶¶ 63, 73.) Notably, Plaintiffs allege that the University "should be required to

disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide." (*Id*. ¶ 223) (emphasis added). In other words, Plaintiffs fail even to plausibly allege that the University has been unjustly enriched.

### C.     On-Campus Housing and Meals Claims

In Count VII, "Certain Plaintiffs" (although which specific Plaintiffs are not identified) attempt to assert a claim for breach of contract premised on the "pro-rata amount of fees" for housing and meal plans that the University did not provide. (*Id*. ¶¶ 224-232.) Not only do Plaintiffs fail to identify which of them (if any) actually are pursuing this claim, the Complaint also fails to identify the terms of any contract for housing or meals. (*See id*.) Finally, as Exhibits C-E make clear, the University already has refunded to students, on a prorated basis, unused fees for housing and meal plans.

Count VIII attempts to assert a claim for "Enrichment Without Cause" premised on the same matters alleged in Count VII. (*Id*. ¶¶ 233-242.) Like Count VII, this claim is brought by "Certain Plaintiffs" without any indication of who those Plaintiffs are. (*See id*.) Similarly, the attached/incorporated exhibits make clear that the University already has refunded to students unused portions of fees for housing and meals. (Exs. C-E.)

### ARGUMENT

The Complaint continues to suffer from the same deficiencies that plagued each of the Plaintiff's prior pleadings. It remains an impermissible shotgun pleading, as each Count incorporates by reference irrelevant factual allegations that necessarily undermine their claims or otherwise conflate the issues. Further, Plaintiffs still have not plausibly alleged any claim under Florida law. Given these continuing deficiencies, Plaintiffs clearly cannot state a claim. Accordingly, the Complaint properly should be dismissed with prejudice.

## I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS A SHOTGUN PLEADING.

Complaints that violate Rule 8(a) and/or Rule 10(b) often are referred to as "shotgun pleadings." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Several different kinds of shotgun pleadings exist. *Id*. One example is where a complaint begins "with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). These "general allegations are incorporated by reference into each count of the complaint." *Id*. "The problem with a shotgun complaint is that most of the counts 'contain irrelevant factual allegations and legal conclusions.'" *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1296 (M.D. Fla. 2014) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)). *See also Johnson Enters.* 162 F.3d at 1332 (labeling a lengthy complaint, which "began with thirty-seven paragraphs of general allegations that were incorporated by reference into each count of the complaint," as a shotgun pleading).

That is precisely the problem that exists in the Complaint (and that existed in Plaintiffs' prior pleadings). Each Count incorporates by reference 89 paragraphs of general allegations. (Compl. ¶¶ 90, 145, 156, 169, 190, 214, 224, 233.) As a result, many of the incorporated allegations simply have no relation to the Count into which they are incorporated or expressly undermine that Count. For example, the Complaint's general allegations include multiple statements regarding the tuition, student fees and housing/meal fees that Plaintiffs allegedly paid. (*Id*. ¶¶ 14, 37, 41-53.) These allegations are then incorporated into all Counts, such that Counts I through III (premised solely on tuition) include irrelevant allegations regarding student fees and housing/meal fees.[6]

---

[6]   Similarly, claims that purportedly are premised either on student fees and housing/meal fees include these general allegations regarding other types of fees/tuition which are not the subject of that Count.

Further, although Plaintiffs attempt to allege several quasi-contractual claims in Counts II, III, V, VI and VIII - - claims that cannot exist when an express contract exists - - Plaintiffs expressly incorporate the existence of such a contract in each of those Counts. (Compl. ¶¶ 90, 145, 156, 169, 190, 214, 224 and 233, which incorporate ¶¶ 63, 73.)

A shotgun pleading properly is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 and 1126 n.3 (11th Cir. 2014) (collecting more than twenty cases). In fact, dismissal with prejudice is appropriate at this stage of the proceedings. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358–59 (11th Cir. 2018) (holding that a district court may dismiss a complaint with prejudice where, as here, the plaintiff has been advised of her complaint's deficiencies and fails to correct them). To be clear, each of the University's five prior motions to dismiss alerted Plaintiffs to the shotgun-pleading deficiencies of their complaints. (Case No. 1:20-cv-22316 (Gold), D.E. 12; Case No. 1:20-cv-22207 (Weiss), D.E. 20; Case No. 1:20-cv-22594 (Dixon), D.E. 30; Case No. 0:20-cv-60851 (Dimitryuk), D.E. 13 and 28.) Thus, Plaintiffs clearly have been on notice of these deficiencies but failed to correct them. Pursuant to the Eleventh Circuit's binding decision in *Jackson*, dismissal with prejudice is proper. *See Jackson*, 898 F.3d at 1358 ("[T]he key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them. If that chance is afforded and the plaintiff fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds."). Accordingly, the University respectfully requests that the Complaint be dismissed with prejudice as a shotgun pleading.

## II.    PLAINTIFFS HAVE FAILED TO STATE ANY PLAUSIBLE CLAIM.

The above analysis should end the inquiry. *See Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (a district court should dismiss or strike a shotgun complaint);

*Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-58 (11th Cir. 2018) (same). Despite the Court's ability to dismiss the Complaint in its entirety as a shotgun pleading, it may address the other bases for dismissal set forth in a motion to dismiss. *Silver Crown Invest., LLC v. Team Real Estate Management, LLC,* 349 F. Supp. 3d 1316, 1334 (S.D. Fla. 2018) (citing *Jovine v. Abbott Laboratories,* 795 F. Supp. 2d 1331, 1337 (S.D. Fla. 2011)). Even on the merits, the Complaint continues to suffer from numerous defects that warrant dismissal.

### A.     Legal Standard on a Motion to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. Appx. 912, 913 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A "'formulaic recitation of the elements of a cause of action will not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court must accept the plaintiff's well-pleaded facts as true but need not accept legal conclusions. *Brinson v. Welsh*, 709 Fed. Appx. 582, 584 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

"Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009)). "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief." *Gavilan v. Balans, L.C.*, No. 14-22791-CIV, 2014 WL 6979625, at *1 (S.D. Fla. Dec. 9, 2014) (citing *Iqbal*, 556 U.S. at 678).

**B.     Plaintiffs' Claims are Barred as a Matter of Law by the Educational Malpractice Doctrine.**

Plaintiffs have asserted various contractual and quasi-contractual theories in the Complaint, but the gravamen of all of their claims is the same: Plaintiffs contend that, by transitioning the University's services to an online/virtual format in response to the COVID-19 pandemic, the University has delivered services that are ineffective, less valuable and cheaper. (Compl. ¶¶ 72, 83, 113, 152-154, 163-165.) Plaintiffs' theory, however, is not cognizable as a matter of Florida law.

Nearly forty years ago, Florida's Third District Court of Appeal held that a claim of "educational malpractice" - - premised on the theory that a plaintiff-student had been placed in an "improper special educational program" - - was not recognized under Florida law. *Tubell v. Dade Cty. Pub. Sch.*, 419 So. 2d 388, 389 (Fla. 3d DCA 1982) (collecting cases from around the country). A few years later, the Florida Supreme Court extended that holding, citing cases nationwide where courts "reject[ed] claims that have arisen in a variety of educational settings." *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 915 (Fla. 1995) (collecting cases). That is because "a private university has broad discretion in what rules and regulations it shall issue and how it enforces its rules." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) (citing *John B. Stetson Univ. v. Hunt*, 102 So. 637, 640 (Fla. 1924) and *Robinson v. Univ. of Miami*, 100 So. 2d 442, 444 (Fla. 3d DCA 1958)). *See also Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008) ("[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation") (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n.11 (1985)).

In sum, Florida simply does not recognize a claim that "a school has failed to properly educate a student." *See Simon v. Celebration Co.*, 883 So. 2d 826, 832 n.1 (Fla. 5th DCA 2004). Applying these principles, federal district courts have rejected claims like Plaintiffs'. *See, e.g.*, *C.P. v. Leon Cty. Sch. Bd.*, No. 4:03 CV 65 RH/WCS, 2005 WL 2133699, at *5 (N.D. Fla. Aug. 27, 2005) ("The claim is in essence one of educational malpractice, that is, failure to use reasonable care to provide an adequate education. This claim fails because Florida law recognizes no such cause of action."); *R.P. v. Leon Cty. Sch. Bd.*, No. 4:03CV387-SPM, 2005 WL 8164796, at *9 (N.D. Fla. Sept. 30, 2005) (dismissing, with prejudice, claim based on school's "failure to provide an adequate education" because it was "in essence a claim for educational malpractice," which "is not cognizable under Florida law").

This bar holds true regardless of the theory by which the claim is pursued. *Armstrong v. Data Processing Inst., Inc.*, 509 So. 2d 1298, 1299 (Fla. 1st DCA 1987) ("Regardless of the nomenclature, the gravamen of count III is a cause of action for educational malpractice which is not cognizable in Florida."); *Tubell v. Dade Cty. Pub. Sch.*, 419 So. 2d 388, 389 n.1 (Fla. 3d DCA 1982) (affirming dismissal of multi-count complaint because, "regardless of the nomenclature" used, the claims were for educational malpractice). In fact, one district court recently confirmed an arbitration decision, in which the arbitrator rejected an educational malpractice claim that - - like Plaintiffs' claims here - - was couched as a breach-of-contract claim. *McCurdy v. Virginia Coll., LLC*, No. 3:17-CV-562-J-32JBT, 2018 WL 1886579, at *3 (M.D. Fla. Mar. 7, 2018) ("Educational malpractice claims are those based on inadequate educational services, even if under the guise of a . . . breach of contract claim.") (alteration in original), *R&R adopted*, 2018 WL 1877472 (M.D. Fla. Apr. 19, 2018).

Here, it is clear that Plaintiffs' claims are based on their allegation that virtual educational services are subpar to in-person services. Such a claim simply does not exist under Florida law.[7]

**C.      Gold and Weiss, as Parents of University Students, Lack Standing.**

It is well-established that, under "Florida law, the legal relationship between a private university and a student is 'solely contractual in character.'" *Sirpal v. Univ. of Miami*, 509 Fed. Appx. 924, 929 (11th Cir. 2013) (citing *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). It also is "well settled that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 984 (11th Cir. 2005) (quotations and citations omitted). A party who has no "legally cognizable interest . . . lacks standing." *Id.*

Here, it cannot be disputed that parents of university students have no legal or contractual relationship with the University. "It is fairly evident that the 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority." *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) (quoting *Apffel v. Huddleston*, 50 F. Supp. 2d 1129, 1133 (D. Utah 1999)). "When a child reaches the age of majority, such 'standing simply transfers from the parent to the child.'" *Id.* (quoting *Loch v. Bd. of Educ.*, No. 3:06–cv–17, 2007 WL 2701274, at *2 (S.D.N.Y. Sept. 17, 2007)). Thus, in *Doe*, the district court dismissed a contract claim against a private university brought by parents of a student. *Id. See also McCormick v. Dresdale*, No. CIV.A. 09-474 S, 2010 WL 1740853, at *2 (D.R.I. Apr. 28, 2010) (holding that parents lack standing to bring a breach of contract claim against a university).

---

[7]      The rationale for this is simple and clear. If a marine biology class was moved to the Florida Keys but a student thought that the laboratory in the classroom was better, is that a breach of contract? If a teacher is perceived by a student as subpar, is that a breach of contract? The potential examples are limitless. It is for good and sound reason that claims like Plaintiffs' are not recognized under Florida law.

Further, the Financial Responsibility Statement (Exhibit A) makes clear that it is the *student* - - not a third-party - - who is responsible for payment of any University charges: "I understand that by enrolling for classes at the University of Miami I am responsible to pay any and all tuition, fees and/or any other miscellaneous charges assessed to my student account. I agree to and accept financial responsibility for all charges on my student account." (Ex. A.) In sum, parents like Gold and Weiss have no legal relationship with the University. Therefore, they lack standing to pursue any claim, and their claims properly should be dismissed with prejudice.

D.     **Plaintiffs[8] Have Failed to State a Claim for Breach of Contract (Counts I, IV and VII).**

In order to state a claim for breach of contract, a plaintiff must allege "(1) a valid contract; (2) a material breach; and (3) damages." *Brown v. Cap. One Bank (USA), N.A.*, No. 15-60590-CIV-Bloom/Valle, 2015 WL 5584697, at *2 (S.D. Fla. Sept. 22, 2015) (quoting *Int'l Star Registry of Ill v. Omnipoint Mktg., LLC*, 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007)). As this Court recently held in dismissing a contract claim with prejudice, "a claim for breach of contract must identify 'the actual terms of the contract allegedly breached.'" *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020) (quoting *Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015)). *See also George v. Wells Fargo Bank, N.A.,* No. 13-80776-CIV, 2014 WL 61487, at *4 (S.D. Fla. Jan. 8, 2014) (failure to identify which provision of the contract has been breached "runs afoul of *Twombly*" and "renders the pleading deficient under Florida contract law"). "It is a basic tenet of contract law that a party can only advance a claim of breach of contract

---

[8]     For ease, the University refers to the four Plaintiffs collectively. However, as set forth *supra*, two of the Plaintiffs (Gold and Weiss) lack standing. To the extent the Court determines that those Plaintiffs have standing, the University's other arguments for dismissal apply with equal force to them.

by identifying and presenting the actual terms of the contract allegedly breached." *Herssein Law*, 594 Fed. Appx. at 608 (quoting *Harris v. Am. Postal Workers Un.*, 198 F.3d 245 (6th Cir. 1999)).

It is well-established that, "[u]nder Florida law, a student and a private university have a contractual relationship." *Jarzynka v. St. Thomas Univ. Sch. of Law*, 310 F. Supp. 2d 1256, 1268 (S.D. Fla. 2004) (citing *John B. Stetson Univ. v. Hunt*, 102 So. 637, 640 (Fla. 1924) and *Sharick v. Se. Univ. of Health Sciences Inc.,* 780 So. 2d 136, 138 (Fla. 3d DCA 2000)). It also generally is accepted that the terms and conditions of that contractual relationship "may be derived from university publications such as the student handbook and catalog." *Sirpal v. Univ. of Miami*, 509 Fed. Appx. 924, 929 (11th Cir. 2013) (citing *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)).

Equally well-settled is a university's right to modify its rules and regulations:

> Implicit in the student's contract with the university upon matriculation is the student's agreement to comply with the university's rules and regulations, which the university is entitled to modify so as to properly exercise its educational responsibility. The appellees' claim of a binding, absolute unchangeable contract is particularly anomalous in the context of training professional teachers in post graduate level work.

*Jallali.*, 992 So. 2d at 343 (quoting *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976)[9]).

*See also Sirpal*, 509 Fed. Appx. at 929 ("A court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes.") (quoting *Jallali*, 992 So. 2d at 343); *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1258 (S.D. Fla. 2006) ("As long as the actions of the University have a rational basis, founded on reason and fact, and

---

[9]      "Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit." *United States v. Brown*, 342 F.3d 1245, 1246 n.1 (11th Cir. 2003) (citing *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981)).

are not shown to be the product of bias or prejudice, they cannot be considered to be arbitrary or capricious. Such decisions by a University generally are accorded great deference.").

Here, Plaintiffs still have failed to allege the specific provisions of their contracts with the University that allegedly have been breached, as required to state a claim for breach of contract. As the United States District Court for the Middle District of Florida explained, a student suing a private university for breach of contract must set forth in her complaint the specific contractual provision that the university allegedly violated:

> "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-*Mobile USA, Inc., 564 F. 3d 1256, 1272 (11th Cir. 2009). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. Id. (citations omitted). Because the terms of a student's implied contract with the university are set forth in the university's catalogs, student manuals, student catalogs, and other policies and procedures, federal courts have dismissed breach of contract claims against a university when the plaintiff fails to specify the particular rule or procedure that the university allegedly violated. *See Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 208 (W.D.N.Y. 2013); *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 358 (N.D.N.Y. 2014) ("Plaintiff must identify the specific terms of the implied contract that he claims were violated by the university …. The failure to do so will result in dismissal of the contract claim").

*Villard v. Capella Univ.*, No. 6:17-cv-1429-Orl-41GJK, 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21, 2017), *R&R adopted,* 2018 WL 2011433 (Apr. 30, 2018).

This pleading requirement - - that a student asserting a breach of contract claim against a private university must specifically identify the policy or rule allegedly breached - - is not unique to Florida law. *See, e.g.*, *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 (D. Or. 2014) ("In order to state a claim for breach of contract in the private university context, the plaintiff 'must point to an identifiable contractual promise that the defendant failed to honor.'") (quoting *Ross v.*

*Creighton Univ.,* 957 F. 2d 410, 416 (7th Cir. 1992)); *David v. Neumann Univ.*, 177 F. Supp. 3d 920 (E.D. Pa. 2016) (noting that the allegations in a breach of contract suit against a private university must identify the specific promise that the school failed to honor); *Nungesser v. Columbia Univ.,* 169 F. Supp. 3d, 369-70 (S.D.N.Y. 2016) (dismissing student's breach of contract claim because student failed to identify specifically designated and discrete promises allegedly breached and noting that general policy statements and broad and unspecified procedures and guidelines will not suffice); *Lee v. Univ. of N.M.,* No. CIV 17-1230 JB/LF, 449 F. Supp. 3d 1071, 1147 (D.N.M. 2020) ("a student asserting a breach of contract claim must identify specific terms of the implied contract that were allegedly violated by the college (such as an internal rule, regulation, or code), and failure to do so is fatal to the claim").

Here, Plaintiffs' relationship with the University is contractual, but they again have failed to set forth any provision of the contract that the University has breached. Although the crux of Plaintiffs' theory is that, in exchange for tuition, the University agreed to provide in-person services, Plaintiffs fail to identify <u>any</u> specific provision of any University rule or publication that sets forth such a contractual term. That is fatal to their contract claim. The only attempt to remedy this defect is Plaintiffs' reference to the Course Catalogue. However, that document does not set forth any contractual terms at all; it merely is a listing of various University course offerings for the Spring 2020 Semester. Further, the Course Catalogue contains no terms essential to the university-student relationship identified above (*e.g.*, rules and regulations, tuition, etc.). In other words, the Course Catalogue does not state (nor do Plaintiffs even allege) that the Course Catalogue links the payment of tuition to the receipt of access to a particular building, classroom or instruction method.

In any event, Plaintiffs' theory simply is not viable. Of course, Plaintiffs would have no claim if a fire rendered a listed building/classroom closed for a particular period of time or if circumstances required movement of a class to another facility. Given the COVID-19 pandemic and the state-, county- and city-wide Stay-at-Home Orders that were enacted in response to same (of which the Court may take judicial notice pursuant to Fed. R. Evid. 201), the University was required to close its physical facilities. Certainly, that decision was neither arbitrary nor capricious - - a requirement under Florida law to state a claim for breach of contract in the university-student context. *See, e.g.*, *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342–43 (Fla. 4th DCA 2008) ("implicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious"). Further, the University "is entitled to modify [its rules and regulations] so as to properly exercise its educational responsibility." *Id.* (quoting *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976)). Not surprisingly, the Complaint fails to allege that the University's actions in transitioning to remote/virtual services were arbitrary or capricious because, plainly, they were not. To the contrary, Plaintiffs concede that the University's actions were "justified." (Compl. ¶ 68.)

In addition, Plaintiffs cannot state a claim for breach of contract in light of the Financial Responsibility Statement, by which Plaintiffs obligated themselves to "pay any and all tuition, fees and/or any other miscellaneous charges assessed to [their] student account." (Ex. A.) That contract does not require the provision of any in-person services. (*Id.*) Under Florida law, "a court must enforce a clear and unambiguous contractual provision." *Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1227 (11th Cir. 2013) (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). Based on the clear and unambiguous language of the contract, Plaintiffs

cannot state a claim seeking refunds for tuition, fees and charges based on the University's alleged failure to provide services it was not contractually obligated to provide.[10]

Finally, in Count VII, Plaintiffs fail to identify which, if any, of them actually contracted with the University for housing or meal plans. This failure is fatal to stating a claim. *See, e.g.*, *Rucker v. Integon Nat'l Ins. Co.*, No. 19-CV-23422, 2020 WL 2616210, at *2 (S.D. Fla. May 23, 2020) (dismissing contract claim because "only parties to a contract or third-party beneficiaries have standing to sue for breach of the contract") (citing *Mustakas v. Integon Nat'l Ins. Co.*, No. 9:19-cv-80911, 2019 WL 6324259, at *2 (S.D. Fla. Nov. 26, 2019)).

For all of these reasons, Plaintiffs have not stated and cannot state a claim for breach of contract. Therefore, Counts I, IV and VII should be dismissed with prejudice.

### E.   Plaintiffs Have Failed to State a Claim for Breach of Implied Contract (Counts II and V).

Plaintiffs' claims for breach of implied contract are virtually indistinguishable from their breach of contract claims and fail for the same reasons set forth above. Importantly, these claims incorporate by reference Plaintiffs' allegations regarding the existence of a contract between themselves and the University. (*Id*. ¶¶ 145 and 190, which incorporate ¶¶ 63 and 73 regarding the alleged contract.) Further, given the Financial Responsibility Statement and the well-established Florida law regarding the relationship between a university and its students, Plaintiffs simply cannot state a claim for breach of implied contract. *See, e.g.*, *Landmark Equity Fund II, LLC v. Residential Fund 76, LLC*, 631 Fed. Appx. 882, 887 (11th Cir. 2015) ("[a] contract cannot be implied in fact . . . where there is an express contract covering the subject-matter involved");

---

[10]   Of course, as Exhibits C-E and Plaintiffs' own allegations make clear, the University - - as a courtesy - - has refunded unused, prorated portions of fees and charges. Plaintiffs' conclusory allegations regarding the failure to refund unidentified funds certainly do not satisfy the requirements of *Iqbal/Twombly* to state a claim.

*Certain Underwriters at Lloyd's of London, UK Subscribing to Policy No. B1230AP56189A14 v. Ocean Walk Resort Condo. Ass'n, Inc.*, No. 616CV258ORL37GJK, 2017 WL 3034069, at *4 (M.D. Fla. July 18, 2017) (holding that the plaintiff's reference to express contracts constituted an abandonment of an implied-contract theory).

Finally, this claim should be dismissed because it is duplicative of Plaintiffs' contract claims. *See, e.g.*, *A&M Mgmt. Inc. v. Deme*, No. 18-63099-CIV, 2019 WL 7344821, at *5 (S.D. Fla. May 14, 2019) ("The Court agrees with Oberon and James that Plaintiffs' claim for money had and received is due to be dismissed as duplicative of their unjust enrichment claim.") (citing *Manning v. Carnival Corp.*, No. 12–22258–CIV, 2012 WL 3962997, at *2 (S.D. Fla. Sept. 11, 2012), in turn quoting *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)) ("Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available.").

For all of these reasons, Counts II and V should be dismissed with prejudice.

## F.   Plaintiffs Have Failed to State a Claim for Unjust Enrichment (Counts III, VI and VIII[11]).

Plaintiffs' unjust enrichment claims are virtually indistinguishable from their contract claims. However, "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Am. Marine Tech, Inc. v. World Group Yachting,* 418 F. Supp. 3d 1075, 1083 (S.D. Fla. 2019) (quoting *Gary v. D. Agustini & Associados S.A.,* 865 F. Supp. 818, 827 (S.D. Fla. 1994)). Although, under certain circumstances, a plaintiff

---

[11]      Count VIII is entitled "Enrichment Without Cause." The University was unable to identify a single Florida decision - - state or federal - - recognizing such a claim. It appears to be a claim that is cognizable in Louisiana. *Canal/Claiborne, Ltd. v. Stonehedge Dev., LLC*, 156 So. 3d 627, 633 (La. 2014) ("That a claim of enrichment without cause under La. Civ.Code art. 2298 is a quasi-contractual claim is well-settled in our jurisprudence."). Because such a claim does not exist under Florida law, it properly should be dismissed. Nevertheless, in an abundance of caution, the University also has analyzed the claim as one for "unjust enrichment."

may plead an unjust enrichment as an alternative theory to a contract claim, "'where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal cause of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action' and warrants dismissal." *Koski v. Carrier Corp.,* 347 F. Supp. 3d 1185. 1196 (S.D. Fla. 2017) (quoting *Licul v. Volkswagen Grp. Of Am.,* No. 13-61686, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013)). Moreover, it is immaterial that Plaintiffs have failed to state a claim for breach of contract; unjust enrichment claims properly may be dismissed where they rely on the same factual predicate as a breach of contract claim that also has been dismissed. *Id.* (citing *Leader Glob. Sol.'s LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1320-21 (S.D. Fla. 2016)).

Further, an unjust enrichment claim necessarily fails where, as here, it includes express allegations regarding the existence of a contract. *See, e.g.*, *Voltage Pay Inc. v. Turin Consulting LLC*, No. 812CV00304MSSEAJ, 2013 WL 12205710, at *3 (M.D. Fla. Oct. 21, 2013) (noting that a plaintiff cannot pursue a claim for unjust enrichment when she alleges that an express contract exists) (citations omitted). Thus, the unjust enrichment claim is not an "alternative" claim but, rather, is premised on the contract. That pleading defect mandates dismissal. *See, e.g.*, *Transcon. Ins. Co. v. L.F. Staffing Servs., Inc.*, No. 07-80865-CIV, 2008 WL 11333474, at *7 (S.D. Fla. Aug. 13, 2008) (dismissing unjust enrichment claim that incorporates allegations regarding breach of contract); *Skyventure Orlando, LLC v. Skyventure Mgmt., LLC*, No. 609-CV-396-ORL-19KRS, 2009 WL 2496553, at *6–7 (M.D. Fla. Aug. 12, 2009) (same).

This Court's recent decision in *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313 (S.D. Fla. 2020), is highly instructive. In *Toca*, this Court dismissed an unjust enrichment claim on these precise grounds:

> [T]his claim must be dismissed because it is duplicative of his claims for breach of express warranty in Counts I and III. "[A]

> plaintiff cannot maintain a claim for unjust enrichment if there is an express warranty governing the plaintiff's rights." *Koski*, 347 F. Supp. 3d at 1195. Thus, "[u]nder Florida law, unjust enrichment is an equitable remedy which necessarily fails upon a showing that an express contract exists." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012). Further, the fact that the Court has determined his express-warranty claims fail as a matter of law and must be dismissed is of no consequence. In *Koski*, the court too dismissed the unjust-enrichment claim because the plaintiffs "allege[d] the existence of an express warranty." 347 F. Supp. 3d at 1195. That the plaintiffs alleged such an existence, not necessarily proved, was sufficient to bar them from also bringing a claim for unjust enrichment "on the same factual allegations." *Id*. The same outcome must control here, as well.

*Id*. at 1327.

The same disposition is appropriate here, given the fact that (1) there is no dispute that the relationship between the University and its students is contractual in nature; (2) Plaintiffs incorporated into their unjust enrichment claims express allegations regarding the existence of a contract; and (3) the claim is duplicative of Plaintiffs' contract claim. For all of these reasons, Counts III, VI and VIII should be dismissed with prejudice.

## III.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

The deficiencies identified above are more than sufficient to require dismissal of the Complaint. Although pleading deficiencies occasionally can be cured through amendment, the Complaint is Plaintiffs' sixth opportunity (collectively)[12] to state their claims, and they still have failed to do so. Dismissal with prejudice on this basis alone is in accord with Eleventh Circuit precedent. *See, e.g.*, *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. Appx. 925, 930 (11th Cir. 2016) (affirming dismissal of first amended complaint with prejudice after plaintiff was advised of deficiencies in its original complaint but filed a "minimally augmented Amended

---

[12]     The Complaint is the third attempt by Dimitryuk and the second attempts by Dixon, Weiss and Gold.

Complaint" that failed to correct those deficiencies); *Frantz v. Walled*, 513 Fed. Appx. 815, 819 (11th Cir. 2013) (affirming dismissal of amended complaint with prejudice where plaintiff "already received one opportunity to correct his complaint's deficiencies" but failed to do so).

In any event, for all of the reasons explained above, further amendment would be futile because Plaintiffs' claims suffer from incurable defects. In fact, a recent decision from the Michigan Court of Claims - - premised on nearly identical allegations - - provides further support for dismissal with prejudice. *Zwiker v. Lake Superior State Univ.*, No. 20-00070-MK (Mich. Ct. Cl. Aug. 31, 2020.)[13] In *Zwiker*, a student attempted to pursue contract and unjust enrichment claims against a university, seeking refunds for tuition and fees after the university transitioned its services online in response to the COVID-19 pandemic. *Id.* at *1-2. The court dismissed all claims with prejudice. First, the university's contract with the student did not require live, in-person instruction and, in any event, the Tuition Contract between the university and the student (similar to the Financial Responsibility Statement here) provided that "students accept full responsibility for all tuition—and fees, discussed below—as a result of registration and/or a receipt of services." *Id.* at *8-10. Second, the student could not pursue unjust enrichment claims because of the existence of a written contract. *Id.* at *12. This reasoning is just as persuasive here.

Finally, because Plaintiffs have failed to state any viable claim against the University in their individual capacities, it is unnecessary to address the deficiencies in Plaintiffs' allegations as to the classes they purport to represent. Rather, "[w]hen a named plaintiff has no cognizable claim for relief, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail." *Henley v. Turner Broadcasting Sys., Inc.,* 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (quoting *Sanford v. MemberWorks, Inc.,* 625 F. 3d 550, 560 (9th Cir. 2010) and

---

[13]     This decision is not yet available on a legal research database but is attached hereto as Exhibit F.

citing *Hardy v. Fischer*, 701 F. Supp. 2d 605, 611 n.5 (S.D.N.Y. 2010)) ("In order for the [class action] complaint to survive this motion to dismiss, the allegations of at least one named plaintiff must state a claim."). *See also Pruell v. Caritas Christi*, No. 09-cv-11466, 2010 WL 3789318, at *4 (D. Mass. Sept. 27, 2010) ("To survive a motion to dismiss [in a putative class action], the allegations of at least one named plaintiff must state a claim.").

In short, "[a] putative class action complaint should be dismissed if the named plaintiff's individual claims fail to state a claim for relief." *Parrish v. Arvest Bank,* 717 Fed. Appx. 756, 760 (10th Cir. 2017). *See also Kunneman Prop., LLC v. Marathon Oil Co.,* No. 17-CV-00456-GFK-JFJ, 2019 WL 4658362, at *1 (N.D. Ok. Sept. 24, 2019) (citing *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F. 3d 1208, 1213 (10th Cir. 2006) ("[a] putative class action complaint is properly dismissed if the named plaintiff's claims fail to state a plausible claim for relief.")). That is the case here. Accordingly, the entire Complaint should be dismissed with prejudice.

## CONCLUSION

Despite having been advised of the deficiencies of their prior complaints, Plaintiffs repeat those same mistakes again. Not only is the Complaint a shotgun pleading, but the claims Plaintiffs have chosen to assert are factually and legally meritless. The Complaint fails to state any claim upon which relief can be granted. Therefore, it properly should be dismissed. Because Plaintiffs already have had six opportunities to state their claims and any further amendment would be futile, the dismissal should be with prejudice.

WHEREFORE, the University respectfully requests that the Court (1) dismiss Plaintiffs' Complaint (D.E. 49) with prejudice; (2) award the University its attorneys' fees and costs to the fullest extent permitted by applicable law; and (3) grant such further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Eric D. Isicoff
      Eric D. Isicoff
      Florida Bar No. 372201
      Isicoff@irlaw.com
      Teresa Ragatz
      Florida Bar No. 545170
      Ragatz@irlaw.com
      Christopher M. Yannuzzi
      Florida Bar No. 92166
      Yannuzzi@irlaw.com

*Lead Counsel for Defendant, University of Miami*

      and

**NELSON MULLINS BROAD AND CASSEL**
Mark F. Raymond
Florida Bar No. 373397
2 S. Biscayne Boulevard
One Biscayne Tower, 21st Floor
Miami, Florida 33131
Tel: (305) 373-9425
E-mail: mark.raymond@nelsonmullins.com

*Co-Counsel for Defendant, University of Miami*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via CM/ECF this 25th day of September, 2020, upon the following:

| | |
|---|---|
| Bursor & Fisher, P.A.<br>Sarah N. Westcot<br>701 Brickell Avenue, Suite 1420<br>Miami, FL 33131-2800<br>Tel: (305) 330-5512<br>Fax: (305) 676-9006<br>E-mail: swestcot@bursor.com<br><br>Bursor & Fisher, P.A.<br>Andrew J. Obergfell *(admitted pro hac vice)*<br>888 Seventh Avenue<br>New York, NY 10019<br>Tel.: (646) 837-7150<br>Fax: (212) 989-9163<br>E-mail: aobergfell@bursor.com<br><br>*Counsel for Plaintiff, Valeria Dimitryuk* | Grossman Roth Yaffa Cohen, P.A.<br>Stuart Z. Grossman<br>Rachel W. Furst<br>2525 Ponce de Leon Boulevard, Suite 1150<br>Coral Gables, FL 33134<br>Tel.: (305)442-8666<br>E-mail: szg@grossmanroth.com<br>E-mail: rwf@grossmanroth.com<br><br>Hagens Berman Sobol Shapiro LLP<br>Daniel J. Kurowski *(admitted pro hac vice)*<br>Whitney K. Siehl *(admitted pro hac vice)*<br>455 N. Cityfront Plaza Dr., Suite 2410<br>Chicago, IL 60611<br>Tel.: (708) 628-4949<br>E-mail: dank@hbsslaw.com<br>E-mail: whitneys@hbsslaw.com |
| Eggnatz Pascucci, P.A.<br>Joshua Harris Eggnatz<br>Michael James Pascucci<br>7450 Griffin Road, Suite 230<br>Davie, FL 33314<br>Tel. (954) 889-3359<br>Fax (954) 889-5913<br>E-mail: JEggnatz@JusticeEarned.com<br>E-mail: MPascucci@JusticeEarned.com<br><br>Leeds Brown Law, P.C.<br>Michael A. Tompkins *(admitted pro hac vice)*<br>Brett R. Cohen *(admitted pro hac vice)*<br>One Old Country Road, Suite 347,<br>Carle Place, New York 11514<br>Tel.: (516) 873-9550<br>E-mail: mtompkins@leedsbrownlaw.com<br>E-mail: bcohen@leedsbrownlaw.com<br><br>*Counsel for Plaintiff, Julie Gold* | Hagens Berman Sobol Shapiro LLP<br>Steve W. Berman *(admitted pro hac vice)*<br>1301 2nd Ave., Suite 2000<br>Seattle, WA 98101<br>Tel.: (206) 623-7292<br>E-mail: steve@hbsslaw.com<br><br>*Counsel for Plaintiff, Michael Weiss* |
| | Anastopoulo Law Firm, LLC<br>Justin S. Hemlepp<br>Eric M. Poulin *(admitted pro hac vice)*<br>Roy T. Willey, IV *(admitted pro hac vice)*<br>32 Ann Street<br>Charleston, SC 29403<br>Tel. (843) 614-8888<br>E-mail: justinh@akimlawfirm.com<br>E-mail: eric@akimlawfirm.com<br>E-mail: roy@akimlawfirm.com<br><br>*Counsel for Plaintiff, Adelaide Dixon* |

By: /s/ Eric D. Isicoff
Eric D. Isicoff