UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED ACTION

CASE NO. 20-60851-CIV-SINGHAL
CASE NO. 20-22207-CIV-SINGHAL
CASE NO. 20-22316-CIV-SINGHAL
CASE NO. 20-22594-CIV-SINGHAL

IN RE: UNIVERSITY OF MIAMI COVID-19
TUITION AND FEE REFUND LITIGATION
_______________________________________/

# ORDER

**THIS CAUSE** is before the Court upon University of Miami's Motion to Dismiss Consolidated Class Action Complaint with Prejudice (DE [52]). The parties have fully briefed the Motion and the matter is ripe for review. For the reasons discussed below, the Motion is granted in part and denied in part.

## I. BACKGROUND

In early 2020, the COVID-19 pandemic upended 21st century life, causing a worldwide shut-down of commercial, religious, cultural, and educational institutions. On March 17, 2020, the University of Miami ("UM") closed most of its on-campus facilities and announced that classes would be conducted in online/remote/distance platforms. (DE [49], ¶ 65). The school's physical plant remained closed and students attended online or remote classes for the remainder of the semester. Several UM students and parents of students filed class-action lawsuits[1] seeking a proportionate refund of tuition, fees, and other semester expenses.

[1] Four separate lawsuits were filed asserting similar claims. Two cases were brought by students Valeria Dimitryuk and Adelaide Dixon and two cases were brought by Julie Gold and Michael Weiss, parents of UM students. On August 5, 2020, the Court consolidated the actions (DE [40]).

Plaintiffs allege that UM breached an express or implied contract to provide in-person education (Counts I and II). Alternatively, Plaintiffs allege that UM was unjustly enriched by retaining tuition paid for in-person education while offering only on-line education (Count III). Plaintiffs also allege breach of an express or implied contract with respect to student fees paid for activities and facilities during the semester (Counts IV and V). Plaintiffs allege that UM breached the fees contracts by making the activities and facilities unavailable for use but not refunding the money paid for those activities or facilities. Alternatively, Plaintiffs allege that UM was unjustly enriched by retaining fees paid for activities or facilities that were not utilized (Count VI). Finally, Plaintiffs allege that certain students contracted and paid for UM to provide housing and meals on campus, but UM required students to move out of on-campus housing and cancelled meals without refunding a pro rata portion of the amounts paid. Plaintiffs allege that the failure to refund a portion of the amounts paid for housing and meals is a breach of contract (Count VII) or, alternatively, unjust enrichment (Count VIII).[2]

UM moves to dismiss the Consolidated Class Action Complaint with prejudice[3] on the grounds that (1) the Complaint is a shotgun pleading; (2) Plaintiffs fail to state a claim upon which relief can be granted; and (3) Plaintiffs Julie Gold and Michael Weiss lack jurisdictional standing.

[2] Count VIII is captioned "Enrichment Without Cause" but the text of the Count is clear that Plaintiffs are claiming unjust enrichment (see DE [49], ¶ 242).

[3] Prior to consolidation of the cases, UM had moved to dismiss each of the separate lawsuits. The Court consolidated the cases, ordered Plaintiffs to file a Consolidated Class Action Complaint, and denied the pending motions to dismiss without prejudice. UM argues contends that Plaintiffs should not be granted leave to amend.

II. ANALYSIS

A. Shotgun Pleading

Rule 8, Federal Rules of Civil Procedure, requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The opposite of a short and plain statement of the claim is what is known as a "shotgun" pleading. "'Shotgun' pleadings are cumbersome, confusing complaints that do not comply with these pleading requirements. We have repeatedly condemned shotgun pleadings." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

There are four basic types of shotgun pleadings: (1) those in which each count adopts the allegations of all preceding counts; (2) those that do not re-allege all preceding counts but are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) those that do not separate each cause of action or claim for relief into different counts; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Id.* at 1321–23 (quotations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

UM argues the Complaint is a shotgun pleading because each count incorporates by reference 89 paragraphs of general allegations and as a result, many of the incorporated allegations have no relation to the count into which they are incorporated.

UM contends that charges for student fees and housing/meal fees are not relevant to plaintiffs' claims for tuition refunds but are nevertheless incorporated into those claims and, thus, the complaint should be dismissed with prejudice.[4]

The Court has carefully reviewed the Complaint and concludes that it is not a shotgun pleading. Although the Complaint does incorporate allegations of tuition and fee payments into each of the counts, the Complaint is not so "replete with conclusory, vague, and immaterial allegations [that] a defendant who reads the complaint would be hard-pressed to understand the grounds upon which each claim against him rests." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (cleaned up). Indeed, each of the counts contains factual allegations specific to that count. The bases for each count are clear in the Complaint. The motion to dismiss for being a shotgun pleading is denied.

B. Failure to State a Claim Upon Which Relief Can Be Granted

Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions;" a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The mere

[4] UM argues that because plaintiffs each filed previous shotgun complaints, the Court must dismiss the present Complaint with prejudice. *See Vibe Micro, Inc*, 878 F.3d at 1297. Even if the Court were to dismiss the Complaint as a shotgun pleading, dismissal would be without prejudice. A non-merits-based dismissal may only be made after the district court identifies the deficiencies in the complaint and gives the plaintiff the opportunity to correct them. *Id.* This Court has never addressed the shotgun pleading argument made by UM and, therefore, dismissal with prejudice would not be warranted.

possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Authority*, 132 S. Ct. 1702 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984*); Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal,* 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

UM moves to dismiss the Complaint arguing that Plaintiffs have failed to allege any plausible claims for relief. As a preliminary matter, UM contends that the Plaintiffs' claims are barred in their entirety as a matter of law by Florida's educational malpractice doctrine. Alternatively, UM argues the Plaintiffs have failed to state claims for breach of contract, breach of implied contract, or unjust enrichment.

1. Educational Malpractice

Florida courts grant educational institutions wide deference in determining degree requirements and appropriate levels or methods of instruction. *See e.g., Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338 (Fla. 4th DCA 2008) (university did not breach contract by

refusing to issue degree to student who did not meet degree requirements); *Tubell v. Dade Cty. Pub. Sch.*, 419 So. 2d 388 (Fla. 3d DCA 1982) (affirming summary judgment for school board on plaintiff's claims that he was inappropriately placed in special education classes for years to his detriment); *Simon v. Celebration Co.,* 883 So. 2d 826 (Fla. 5th DCA 2004) (affirming dismissal of claim under Article IX, section 1 of the Florida Constitution which guarantees a high quality free public education because constitution does not create a private cause of action). UM argues that its decision to offer only remote instruction due to COVID-19 should be given the same deference given to educational institutions in these cases. More precisely, UM argues that Plaintiffs' breach of contract and unjust enrichment claims are actually claims for educational malpractice and thus barred under Florida law. The Court disagrees.

Florida courts recognize that colleges and universities have a legal relationship with their students that is "contractual in nature." *Jallali*, 992 So. 2d at 342 (quoting *John B. Stetson Univ. v. Hunt,* 102 So. 637, 640 (Fla. 1924)). "Under this contract implied in fact, the student 'pays a fee for services' and the private university provides 'an educational experience designed to lead to a . . . degree.'" *Id.* (quoting *Gross v. Family Servs. Agency, Inc.,* 716 So. 2d 337, 339 (Fla. 4th DCA 1998)). The university has the right to determine "the terms under which it will admit and subsequently graduate students who will subject themselves to the rules, regulations, and regimen of the college." *Id.* (quoting *Univ. of Miami v. Militana,* 184 So. 2d 701, 704 (Fla. 3d DCA 1966). Thus, schools will not be compelled to graduate students who did not meet the criteria for graduation as offered in the school's publications at the time of enrollment. *Id.* But Plaintiffs are not challenging UM's criteria for graduation.

In this case, Plaintiffs allege that UM's various publications created a contract for in-person instruction and that UM breached that contract by offering only remote instruction in response to COVID-19. Plaintiffs alleged they were damaged because remote instruction was not contemplated and was of lesser value than the in-person instruction they paid to receive. This is not a claim for educational malpractice; it is a claim for breach of contract. "The focus of this case is simply whether Defendant promised something it later failed to deliver." *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.,* 2021 WL 140708, at *4 (M.D. Fla. Jan. 14, 2021) (suit alleging breach of contract due to remote instruction during COVID-19 pandemic not dismissed on grounds of educational malpractice). The "educational malpractice doctrine" does not bar Plaintiffs' claims.

2. Breach of Contract

To state a claim for breach of contract, a plaintiff must "plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). UM moves to dismiss Plaintiffs' claims for breach of contract (Count I – tuition, Count IV – student fees, and Count VII – housing/meals) and for breach of implied contract (Count II – tuition and Count V – student fees) for failure to state a plausible claim. UM argues that "a claim for breach of contract must identify 'the actual terms of the contract allegedly breached.'" *Toca v. Tutco, LLC,* 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020) (quoting *Herssein Law Grp. v. Reed Elsevier, Inc.,* 594 Fed. Appx. 606, 608 (11th Cir. 2015)). UM contends that Plaintiffs fail to identify any terms that would support their claim that they paid tuition in exchange for in-person classes. The Court disagrees.

It is well-settled in Florida that "the terms of the relationship between a student and a university may be found in university catalogs, student manuals, student handbooks, and other university policies and procedures." *Rosado v. Barry University Inc.,* 2020 WL 6438684, at *3 (S.D. Fla. Oct. 30, 2020) (denying motion to dismiss breach of contract for university's failure to provide in-person classes in response to COVID-19); *Salerno v. Fla. S. Coll.,* 2020 WL 5583522, at *4 (M.D. Fla. Sept. 16, 2020) (same); *Sirpal v. Univ. of Miami,* 684 F. Supp. 2d 1349, 1359 (S.D. Fla. 2010); *Jallali,* 992 So. 2d at 342 (student's relationship with university is based in contract arising from university's rules, regulations, regimen and publications at the time of enrollment).

Several federal courts in Florida – applying Florida law – have denied motions to dismiss breach of contract claims brought against colleges and universities following COVID-19 transitions to remote learning. *See Rosado*, 2020 WL 6438684; *Gibson v. Lynn Univ., Inc.,* 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020); *Salerno*, 2020 WL 5583522; *Rhodes,* 2021 WL 140708, at *4. As in this case, the plaintiffs cited to portions of the universities' publications, policies, and course of conduct "to suggest courses would be conducted in-person and students would have access to campus facilities and activities." *Gibson*, 2020 WL 7024463, at * 3. These courts found that the plaintiffs met the burden under Florida law of pleading a breach of contract:

> Throughout the Amended Complaint, Plaintiff cites to portions of Lynn's publications and policies that suggest courses would be conducted in-person and students would have access to campus facilities and activities. . . . At this early stage of the case—given that Florida law recognizes that the university/student contract may be implied in the university's publications—these factual allegations are sufficient to plead the existence of a valid contract for in-person education.

*Id.* And, also:

> Rosado alleges that based on documents including the student handbook, university catalog, program publications, and course syllabi, and registration papers, which invoiced Rosado higher tuition corresponding to in-person classes rather than the lower tuition associated with Barry's online learning program—a contract promising in-person instruction was created. The Court agrees with Rosado that there is sufficient factual content alleged in the Amended Complaint to establish the existence of a valid contract with respect to in-person education.

*Rosado,* 2020 WL 6438684, at *3. And from the Middle District of Florida:

> The crux of the College's motion is that the amended complaint does not identify a specific contractual provision that establishes that the College had an obligation to provide "in-person educational services" for the entire Spring 2020 semester. The Court disagrees based on its careful review of the amended complaint. Throughout the amended complaint, Murillo alleges that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation. These allegations are sufficient at this early stage, especially because Florida law recognizes that the college/student contract is typically implied in the College's publications. In other words, this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous.

*Salerno,* 2020 WL 5583522, at *5. The same analysis governs here. Throughout the Complaint, Plaintiffs cite UM publications, web pages, catalogs, and policies that support Plaintiffs' claim of a contract for on-campus instruction and services. (*See, e.g.,* DE [49], ¶¶ 25 – 55; 93 – 137). The Complaint states a claim for breach of contract under Florida law.

UM argues that prior to registering for classes all students must sign and submit a Financial Responsibility Statement through which the students assume responsibility "to pay any and all tuition, fees and/or other miscellaneous charges" in exchange for registering for classes. (DE [52-1]). UM notes that the Financial Responsibility Statement

does not distinguish between in-person or remote classes and, therefore, UM had no contractual duty to provide in-person instruction. Plaintiffs respond that the Financial Responsibility Statement is not a contract in that it does not address numerous material terms concerning the students' enrollment, including the cost and amount of tuition and fees owed. The Court agrees. The Financial Responsibility Statement may be relevant to the formation of the alleged contract between Plaintiffs and UM, but it is not the entirety of the parties' agreement. *See Jallali,* 992 So. 2d at 342 (student's relationship with university is based in contract arising from university's rules, regulations, regimen and publications at the time of enrollment).

Finally, UM argues that the claims for breach of implied contract and unjust enrichment must be dismissed because they are indistinguishable from the breach of contract claims. Plaintiffs correctly point out that Rule 8 permits pleading in the alternative. Fed. R. Civ. P. 8(d)(3) ("[a] party may state as many separate claims or defenses as it has, regardless of consistency"). This case is at the pleading stage; once a record has been developed, the parties will have the opportunity to address factual and legal issues raised by the pleadings. But at this stage, Plaintiffs are entitled to plead alternative theories of relief.

C. Jurisdictional Standing

UM moves to dismiss the claims brought by Plaintiffs Julie Gold ("Gold") and Michael Weiss ("Weiss") for lack of standing. Gold and Weiss are parents of UM students who paid their children's tuition and fees. Complaint, ¶ 21 (DE [49]).

A defendant may make a facial or a factual attack on standing. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008). "A facial

attack on the complaint requires the court to merely look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion." *Id.* A factual attack uses materials extrinsic from the complaint, such as affidavits or testimony. *Id.* UM has made a facial attack on Gold's and Weiss' standing.

To establish standing, a plaintiff must show "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cty., Fla.*, 879 F.3d 1274, 1281 (11th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "At the pleading stage, the plaintiff must clearly allege facts demonstrating each of these elements." *Gesten v. Burger King Corp.,* 2017 WL 4326101, at *1 (S.D. Fla. Sept. 27, 2017) (citing *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016)).

"Injury in fact is a constitutional requirement." *Spokeo, Inc.,* 136 S. Ct. at 1547–48 (quotations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc.,* 136 S. Ct. at 1548 (internal quotations and citations omitted). To be concrete, "the injury must be 'de facto'; that is, it must actually exist." *Id.* at 1549. "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 1549.

The Court agrees with UM that Gold and Weiss lack standing. The Complaint contains no allegations that they suffered an injury in fact. The contract alleged in the

Complaint was that the *students* would receive a residential, in-person educational experience at UM in exchange for payment of tuition and fees. Florida law recognizes a contract between the *student* and the university. *Jallali,* 992 So.2d 338. The Complaint alleges that UM breached the contract by failing to provide in-person education to the *students*. Although Gold and Weiss certainly have a parental interest in their children's education, the education – and the relationship with the university – belongs to the student, not to the parent. The Complaint fails to allege any legally protected contractual relationship between UM and Gold or Weiss. Likewise, the Complaint fails to allege any concrete injury to Gold or Weiss. *See Salerno,* 2020 WL 5583522, at *4 ("It is also of note that the lack of injury to Salerno [the mother] is clear regardless of whether Salerno provided financial support to her daughter. That arrangement was between mother and daughter. It does not establish a relationship between the College and Salerno under these facts.").

The Complaint fails to establish standing on the part of Gold or Weiss. The Court is, therefore, obligated to dismiss their claims for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1); *Salerno*, 2020 WL 5583522, at *4 (parent who paid tuition lacked standing to sue for refund of tuition due to switch to remote learning in response to COVID-19).

III. CONCLUSION

The Court concludes that Plaintiffs have alleged plausible claims under Florida law for breach of contract and unjust enrichment. Plaintiffs Gold and Weiss, however, lack standing to sue as they have failed to allege an injury in fact. Their claims, therefore, will be dismissed. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that University of Miami's Motion to Dismiss Consolidated Class Action Complaint with Prejudice (DE [52]) is **GRANTED IN PART AND DENIED IN PART.** The claims of Julie Gold and Michael Weiss are **DISMISSED** for lack of standing**.** The Motion to Dismiss is otherwise denied.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 4th day of March 2021.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel via CM/ECF