**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CONSOLIDATED ACTION

| | |
|---|---|
| IN RE: UNIVERSITY OF MIAMI COVID-19 TUITION AND FEE REFUND LITIGATION | CASE NO. 20-60851-CIV-SINGHAL<br>CASE NO. 20-22207-CIV-SINGHAL<br>CASE NO. 20-22316-CIV-SINGHAL<br>CASE NO. 20-22594-CIV-SINGHAL |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATON**

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

LEGAL STANDARD........................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

I.      The proposed classes are ascertainable because they rely on objective criteria. ..... 8

II.     Numerosity is satisfied as the classes contain thousands. ....................................... 9

III.    Commonality exists given numerous common questions and UM's standard conduct to its student body. .................................................................................. 10

IV.    Typicality is satisfied because Plaintiffs' interests align with class members' interests. ................................................................................................................ 12

V.     Plaintiffs will fairly and adequately represent the class because they have no conflicts of interest, will continue to prosecute the action, and are represented by experienced counsel. ....................................................................................... 13

VI.    The requirements of Rule 23(b) are satisfied because common questions of law and fact predominate and a class action is superior to individual, piecemeal resolution. ......................................................................................... 15

      A.    Common issues predominate given UM's common course of conduct to its student body and identical legal claims, which do not vary from class member to class member. ........................................ 16

      B.    Class action is far superior to thousands of individual actions. .............. 19

CONCLUSION................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**PAGE(S)**

CASES

*Alexander v. Florida Intern. University Bd. of Trustees*,
No., 2021 WL 9038526 (Fla.Cir.Ct. Dec. 30, 2021) ....................................................... *passim*

*Allapattah Servs., Inc. v. Exxon Corp.*,
333 F.3d 1248 (11th Cir. 2003) .................................................................................... 19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................... 13

*Arredondo v. Univ. of La Verne*,
341 F.R.D. 47 (C.D. Cal. 2022) ..................................................................................... 1

*Belin v. Health Ins. Innovations, Inc.*,
337 F.R.D. 544 (S.D. Fla. 2021) .......................................................................... *passim*

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
242 F.3d 290 (5th Cir. 2001) ....................................................................................... 19

*Cox v. Am. Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ................................................................................... 10

*Cross v. University of Toledo*,
2021 WL 1822676 (Ohio Ct.Cl. Apr. 26, 2021) ............................................................. 1

*De Leon-Granados v. Eller & Sons Trees, Inc.*,
497 F.3d 1214 (11th Cir. 2007) ..................................................................................... 8

*Duke v. Ohio Univ.*,
2022 Ohio Misc. LEXIS 132 (Ohio Ct. Cl. Feb. 5, 2022) ................................................ 1

*Evans v. U.S. Pipe & Foundry Co.*,
696 F.2d 925 (11th Cir. 1983) ..................................................................................... 10

*Fla. Power Corp. v. City of Winter Park*,
887 So. 2d 1237 (Fla. 2004) ........................................................................................ 18

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..................................................................................................... 12

*Griffin v. Carlin*,
755 F.2d 1516 (11th Cir. 1985) ................................................................................... 14

*Herman v. Seaworld Parks & Ent., Inc.*,
  320 F.R.D. 271 (M.D. Fla. 2017)............................................................................. 19

*Jallali v. Nova Se. Univ., Inc.*,
  992 So. 2d 338 (Fla. Dist. Ct. App. 2008) .............................................................. 16

*Karhu v. Vital Pharms., Inc.*,
  621 F. App'x 945 (11th Cir. 2015) ............................................................................ 9

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) .................................................................................. 11

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ................................................................................ 7

*Kreuzfeld A.G. v. Carnehammar*,
  138 F.R.D. 594 (S.D. Fla. 1991).............................................................................. 10

*Little v. Grand Canyon Univ.*,
  2022 WL 266726 (D. Ariz. Jan. 28, 2022) ............................................................... 1

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) ................................................................................. 11

*Piazza v. Ebsco Indus., Inc.*,
  273 F.3d 1341 (11th Cir. 2001) .......................................................................... 8, 12

*Rensel v. Centra Tech, Inc.*,
  2 F.4th 1359 (11th Cir. 2021) .................................................................................... 8

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
  211 F.3d 1228 (11th Cir. 2000) .............................................................................. 16

*Smith v. The Ohio State Univ.*,
  2022 Ohio Misc. LEXIS 131 (Ohio Ct. Cl. Jan. 21, 2022)........................................ 1

*Valley Drug Co. v. Geneva Pharm., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) .............................................................................. 13

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) .............................................................................. 15

*Villard v. Capella Univ.*,
  2017 WL 9253388 (M.D. Fla. Dec. 21, 2017)......................................................... 16

*Villarino v. Pacesetter Pers. Serv., Inc.*,
  2022 WL 2308701 (S.D. Fla. May 20, 2022) ............................................................ 8

*Waitt v. Kent State Univ.*,
    2022 Ohio Misc. LEXIS 130 (Ohio Ct. Cl. Feb. 11, 2022) ....................................................... 1

*Walco Investments v. Thenen*,
    168 F.R.D. 315 (S.D. Fla. 1996) ...................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. 8, 15

*Weiman v. Miami Univ.*,
    2021 Ohio Misc. LEXIS 3400 (Ohio Ct. Cl. Dec. 13, 2021) ............................................... 1

*Wistar v. Raymond James Fin. Servs., Inc.*,
    365 F. Supp. 3d 1266 (S.D. Fla. 2018) ............................................................................ 16

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) ....................................................................................... 10

## RULES

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

## INTRODUCTION

This case raises one central question: who should bear the burden of Defendant University of Miami's ("Defendant" or "UM") failure to provide students with bargained for on-campus education: the students – entering the workforce with an average indebtedness of $18,645[1] or UM – an institution supported by a $1.05 billion endowment.[2] This question will be answered the same way for every student in the proposed class because every student who paid UM tuition and/or fees for the Spring 2020 semester lost a portion of the benefit of their bargain when the school closed in response to the pandemic and transitioned classes from in-person to virtual. Therefore, class action treatment is not merely appropriate, it is the ideal way to answer questions about the propriety and calculation of refunds to each student. Multiple courts, including one applying Florida law, have readily concluded that class treatment is appropriate in similar cases: *See, e.g.*, *Alexander v. Florida Intern. University Bd. of Trustees*, No., 2021 WL 9038526, at *1 (Fla.Cir.Ct. Dec. 30, 2021)). *See also Arredondo v. Univ. of La Verne*, 341 F.R.D. 47 (C.D. Cal. 2022); *Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Ariz. Jan. 28, 2022); *Waitt v. Kent State Univ.*, No. 2020-00392, 2022 Ohio Misc. LEXIS 130 (Ohio Ct. Cl. Feb. 11, 2022); *Duke v. Ohio Univ.*, No. 2021-00036, 2022 Ohio Misc. LEXIS 132 (Ohio Ct. Cl. Feb. 5, 2022); *Smith v. The Ohio State Univ.*, No. 2020-00321, 2022 Ohio Misc. LEXIS 131 (Ohio Ct. Cl. Jan. 21, 2022); *Weiman v. Miami Univ.*, No. 2020-00614, 2021 Ohio Misc. LEXIS 3400 (Ohio Ct. Cl. Dec. 13, 2021); *Cross v. University of Toledo*, 2021 WL 1822676 (Ohio Ct. Cl. Apr. 26, 2021); Ex. 12 (class certification order in *Keba v. Bowling Green State Univ.*, No. 2020-00639JD (Ohio Ct. Cl. Mar. 30, 2022)).

Each requirement of Rule 23 is satisfied. The class is easily identifiable; UM can readily produce a list of all students who were enrolled for in-person instruction and paid tuition and/or

---

[1] https://www.usnews.com/best-colleges/university-of-miami-1536/paying.
[2] https://datausa.io/profile/university/university-of-miami.

fees in the Spring 2020 semester. Plaintiffs are members of the class because they paid tuition and fees to attend UM during the Spring 2020 semester. Numerosity is satisfied because thousands of students paid UM tuition and fees to attend the Spring 2020 semester and joinder is impracticable. Commonality exists because this case turns on the same questions for all class members: UM either breached its contract with all class members or it did not, and it is either unjust for UM to retain tuition and fees for all class members or it is not. Plaintiffs' claims are typical of the class because they arise from the same conduct as the claims of all other class members and are based on the same theory. Plaintiffs are adequate class representatives who have zealously advocated for the class, responded to discovery, sat for depositions, and have retained experienced counsel and expert witnesses to further the interests of the class. The central question regarding the propriety and calculation of any refund that students should receive because of UM's decision to no longer offer in-person classes predominates over any individual issues that may arise. Finally, a class action is superior to thousands of individual lawsuits. As a result, the Court should certify the following proposed classes[3]:

> **The Tuition Class:**
> All students who paid tuition and were enrolled in classes at the University of Miami for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.
>
> **The Fees Class**
> All students who paid the Activity Fee, Athletic Fee, Wellness Center Fee, Student Health and Counseling Centers Fee, and Student Center Fee, and were enrolled in classes at the University of Miami for the Spring 2020 semester.

---

[3] Excluded from the proposed classes are: (1) students enrolled in a study abroad program for the Spring 2020 semester; (2) students withdrawing from University of Miami prior to March 6, 2020; (3) the University of Miami, and any of its respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and (4) the judicial officers, and their immediate family members, and the Court staff assigned to this case.

Plaintiffs further request that the Court appoint Plaintiffs as class representatives and appoint their lawyers as co-lead class counsel under Rule 23(g).

## **FACTUAL BACKGROUND**

The central facts relevant to class certification are not in genuine dispute. UM is an institution of higher learning in Coral Gables, Florida. Def.'s Am. Ans. ¶ 6 (ECF 90). While it disputes the terms and sources of its contractual bargain with its students, UM admits that it entered into a contract with its students. *Id.* ¶ 92. UM charged, and Plaintiffs and class members paid, tuition and fees when they registered to take classes during the Spring 2020 semester (*see id.* ¶¶ 14, 37, 47), specifically registering for classes that UM specifically described as in-person. *See also id.* ¶¶ 128–129 (admitting "that certain of its Spring 2020 classes began with in-person instruction" and "that certain of its Spring 2020 classes continued through early March with in-person instruction"); Ex. 4 (Beckett Dep.) at 19:24–20:1 (Rule 30(b)(6) testimony by University Registrar: "Students enroll in their courses, and after they have enrolled, their bill is generated, so students pay their bill after they register for courses."); *id.* at 19:5–6 ("So the majority of the students registered for an … in-person course"). When Plaintiffs reviewed their options for Spring 2020 classes using Defendant's "CaneLink" registration portal, UM listed classes not only by description, but also by physical location:

| Class Details | |
|---|---|
| **Instructor(s)** | Malancha Sarkar |
| **Meets** | TuTh 12:30PM - 1:45PM |
| **Dates** | 01/13/2020 - 05/06/2020 |
| **Room** | Cox Science 145 |
| **Instruction Mode** | In Person |
| **Campus** | Gables Campus |
| **Location** | Coral Gables |
| **Components** | Lecture Required |

*See*, *e.g.*, Dixon Decl., ¶¶ 6–7; Dimitryuk Decl. ¶¶ 6–7; Ex. 1 (Duerk Dep.) at 38:1–4 (Rule 30(b)(6) testimony by Executive Vice President for Academic Affairs & Provost: "Q. Okay. So if I wanted to register for an in-person format, I could go ahead and do that if I wanted to, correct? A. Yes."). Along with the fact that UM has provided in-person classes every year since its founding, these course descriptions demonstrate a tacit understanding between the parties that UM would provide in-person classes to Plaintiffs and other students for the entire Spring 2020 semester. Ex. 4 (Beckett Dep.) at 20:24–21:1 ("They registered for those courses in November, so at that time, yes, the expectation was that they would attend in person."); *id*. at 29:19–30:5 (discussing CaneLink "Q. Okay. Next to these scheduled courses that are being offered in the Spring 2020 semester, there is a specific location on campus where that class is to be taught is that correct? A. That is correct. Q. So that's where students could expect that that's where they would be having the lectures? A. Correct. And that's where the university would expect the students to be attending the lectures; is that right? A. Yes.").

Other portions of UM's website also clarified that in-person classes and access to the UM campus were fundamental aspects of what UM would provide its students. UM's "Student Life"

webpage tells students to "[s]et on foot on campus and you'll feel it—a vibe that celebrates life, learning, and daily activities that are anything but routine. Capitalizing on its glorious weather, national reputation and location at the crossroads of the Americas, the University of Miami offers students unparalleled academic support, enrichment activities galore, sports, and cultural offerings, wellness and fitness programs, and endless opportunities to explore, engage, and better the community and the world." Ex. 10. The "Experiential Learning" webpage, geared towards prospective students, indicates that "At UM, your education extends beyond the classroom walls to labs, studios, hospitals, museums, internships—and even countries half-way around the world. With access to a major metropolitan city, the real-world learning opportunities abound." Ex. 9.

UM's detailed descriptions of its location, facilities, technologies, and amenities available to students in its marketing materials similarly indicated that classes would be taught in-person and/or that they would involve in-person laboratories or other in-person and hands-on experiences. Ex. 5 (Crozier Dep.) at 77:4–11 (Rule 30(b)(6) testimony by Assistant Vice President, Undergraduate Admissions and Marketing: "Q. So the marketing materials that the University of Miami uses go beyond just the academic and classroom content of its courses, correct? A. Yes. The communications and materials highlight an array of things about the university, including academics, location, athletics, extracurriculars, yes."). By way of example:

- "Located in picturesque Coral Gables just eight miles away from the metropolitan city of Miami, your life at the University of Miami will be a mix of suburban cham and big city excitement." Ex. 16.

- "State-of-the-Art Facilities: Our facilities include an 85,000-square-foot seawater research complex, research vessels, a helicopter observation platform, our marine research station, and scientific diving program." Ex. 15.

- The School of Architecture recently broke ground on the 20,000-square-foot Thomas P. Murphy Design Studio Building! Dean Rodolphe el-Khoury says the structure 'will fuel innovation' and 'forever change the way students are taught as well as the way they learn." Ex. 17.

- "Picture yourself here, collaborating with dozens of students to design mixed-use developments, homes, office buildings, and other structures using high-tech practices in a fabrication lab equipped with workstations for advanced digital production." Ex. 17.

- "The UM college of Engineering – Johnson & Johnson 3D Printing Center of Excellence Collaborative Laboratory allows the realization of cooperative educational and research opportunities for students. The facility provides access to a wide variety of advanced 3-D printers and fabricating equipment and has an engineer/scientist available for training purposes." Ex. 9.

- "You're one step closer to senior year, and it's almost time to start narrowing down your short list of colleges. As you do so, take into account the on-campus experience you'll encounter outside the classroom. Pictures yourself in the vibrant student life found only at UMiami." Ex. 13.

- "A University of Miami education reaches beyond the limits of the traditional classroom. Here, students study what they love and learn by doing. They cultivate career-relevant skills and experience by conducting research, serving communities, and living and learning abroad as global citizens." Ex. 18.

- "The Shalala Student Center houses student organization offices and lounge spaces, a 24-hour study space, meeting and activities rooms, and a media suite." Ex. 14.

- "Richter Library (Main Library) Creative Studio. The Creative Studio, located on the first floor, has cameras, video cameras, Go Pros and GoPro 360 Fusion, digital audio recorders, mobile adapters, tripods, light kits, projector with screen, portable photo booths, rotating platform, drawing tablets, green screen, Oculus Rift and Oculus Go, and video game consoles available." Ex. 19.

Accordingly, when UM transitioned from in-person instruction and closed certain campus facilities after March 13, 2020 (*see* Am. Ans. ¶¶ 39, 54, 73), UM breached its contract and its students, including Plaintiffs, were denied the benefit of their bargain: classes were no longer conducted in person, and students could no longer access the campus or use the facilities they had paid to use. Ex. 1 (Duerk Dep.) at 62:22–25 ("By virtue of the Coral Gables, Miami-Dade, you know, safer at home, as well as other orders, we were obligated to close the Richter Library to students as well as access to – the other buildings on campus."); *id*. at 72:1–5 ("[A]s we discussed multiple times today, there was no on-campus activities of any kind immediately after the campus

– the government actions and that caused us to shut down the in-person activities."). As a result, numerous students complained to UM about online classes and the lack of a refund. Ex. 3 (Valdes-Fauli Dep.) at 25:13-26:1 (Rule 30(b)(6) testimony by Assistant Vice President, Service & Experience Excellence: "Q. … what were those – general words, what were those complaints about? A. Students asking, you know, in that spring term, students asking about – I think some of them had to do with fees also, but asking about whether or not there would be any kind of tuition discount, or whether or not there would be any kind of fee – fee discount.").

UM provided students with no refund for tuition and failed to issue adequate refunds for fees. Am. Ans. ¶¶ 75–76; Ex. 3 (Valdes-Fauli Dep.) at 40:4–6 ("Q: They did not receive any refund, correct? ... A: Not for tuition."); Ex. 2 (Gilliland Dep.) at 91:19–23 (same). Regarding tuition, UM maintains the classwide position that "no such refund is warranted or required." *Id.* ¶ 75; Ex. 1 (Duerk Dep.) at 173:12–16 ("Q. Did the university ever consider providing any sort of refund for tuition monies paid for the portion of the semester whether the university was closed down? A. I would never recommend that."). And regarding fees, it maintains the classwide position that it refunded those "fees for services/facilities that it was unable to provide as a result of the COVID-19 pandemic." *Id.* ¶ 76. Plaintiffs' position is that they did not receive the benefit of their bargain, which was to enroll in classes conducted in-person, and they intend to show (including through expert testimony) that they should have been charged less for the substitute remote instruction that UM provided. *See generally* Ex. 20 (Dr. Cowan Report).

## LEGAL STANDARD

Certification of a class is appropriate where the plaintiffs satisfy the four requirements of Rule 23(a) and at least one standard under Rule 23(b). *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250–51 (11th Cir. 2004)). Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)). These requirements are generally called "numerosity, commonality, typically, and adequacy." *De Leon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1220 (11th Cir. 2007) (quoting *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)).

"'A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.'" *Villarino v. Pacesetter Pers. Serv., Inc.*, 2022 WL 2308701, at *3 (S.D. Fla. May 20, 2022) (Singhal, J.) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011))). "The Rule 23 analysis is 'rigorous' and 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification questions.'" *Id.* "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* Indeed, the Eleventh Circuit recognizes that district courts must often permit "some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Id.* (quoting *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1365 (11th Cir. 2021)). Plaintiffs satisfy these standards.

## ARGUMENT

**I.    The proposed classes are ascertainable because they rely on objective criteria.**

To start, the proposed classes are ascertainable. "Before considering Rule 23's explicit requirements, the Court must determine whether the proposed class has been adequately defined and is ascertainable. *Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 556 (S.D. Fla. 2021) (Singhal, J.) (quotation and citation omitted). This occurs "where the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Id.* "'Identifying class members is administratively feasible when it is a 'manageable process that

does not require much, if any, individual inquiry.'" *Id.* (quoting *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015)). Here, the class definitions contain the objective criteria necessary to identify class members. Each class is tied to student enrollments and payments, UM maintains records of each student enrolled for the Spring 2020 semester, it knows which courses students enrolled in, and it knows whether those students paid tuition and/or fees for that semester, having billed each student. *See, e.g.*, Ex. 4 (Beckett Dep.) at 23:20–24 ("CaneLink is the student information system, and that is where we keep all the students information …"); *id.* at 43:23–44:4 ("Q. Okay. Would the university have student contact information for students enrolled in on-campus courses for the Spring 2020 semester? ... A. We would have whatever the most up-to-date information the student has provided in CaneLink."); Ex. 2 (Gilliland Dep.) at 174:3–11 (Rule 30(b)(6) testimony by Vice President & Chief Financial Officer: "Q. So, Mr. Gilliland, if you were to look to find the identity of all of the students that received fee refunds, how would you go about finding that information … A. It would be looking at having somebody run a report that has student account access to report on everybody that received a refund during spring '20 …"). *See Alexander*, 2021 WL 9038526, at *3 (concluding "[t]he proposed Class is objectively defined to include only those students who may assert claims for damages against FIU as a consequence of their payment of fees for services and access to facilities that FIU did not provide because of its decision to shut down its campuses and on-campus services and facilities. Further, the Statements of Charges, which the university sends to all students, show which fees were charged and paid by Plaintiffs as well as all Class members.").

## II.    Numerosity is satisfied as the classes contain thousands.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Whether Rule 23(a)(1) has been satisfied depends on the facts of each case. *Walco Investments v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla. 1996). Although Plaintiffs need not show

the precise number and identity of class members, mere speculation as to the number of parties involved and general allegations of numerosity cannot satisfy Rule 23(a)(1). *See Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925 (11th Cir. 1983). Generally, a class of forty people or more is generally considered adequate for such purpose. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). To satisfy this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). *See also Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) (there exists no definite standard as to the size a class must attain to satisfy Rule 23(a)(1)). Here, numerosity is satisfied because approximately 16,000 students were enrolled at UM for the Spring 2020 Semester. Ex. 4 (Beckett Dep.) at 18:19–24 ("Q. Okay. Do you know roughly how many students were enrolled for on-campus education at the university for the Spring 2020 semester? A. I have a benchmark number. So there were approximately in all careers 16,000 – just shy of 16,800 who were enrolled originally."); *see also* ECF 49 at ¶ 15 ("Plaintiffs are informed and believe that there are thousands of members of the Classes[.]"); Ex. 1 (Duerk Dep.) at 181:9–13 (Q. Okay. What is the – what is the total number of students enrolled approximately for the Spring 2020-semester. A. I think at that time our enrollment was around 16,000."). Given this large number of potential class members, joinder is impracticable. *See, e.g.*, *Belin*, 337 F.R.D. at 556 (finding numerosity established where "the putative class purports to represent more than tens of thousands").

## III.   Commonality exists given numerous common questions and UM's standard conduct to its student body.

The commonality requirement demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This Rule "does not require that all the questions of law and fact raised by the dispute be common," *Cox v. American Cast Iron Pipe Co.*, 784 F.2d

1546, 1557 (11th Cir. 1986), or that the common questions of law or fact "predominate" over individual issues. Common nuclei of fact are typically manifest or present where the defendant has engaged in standardized conduct towards members of the class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). "Like numerosity, [t]he threshold for commonality is not high." *Belin*, 337 F.R.D. at 556 (citation omitted, alteration in original).

Here, there exists no dispute that UM cancelled its Spring 2020 in-person classes for all class members and has not refunded or abated Plaintiffs and the class members tuition or relevant fees. Ex. 3 (Valdes-Fauli Dep.) at 39:23-40:6 ("Q. Students at the University of Miami during spring semester 2020 had to pay full price for tuition, correct? They did not receive a refund, correct? A. Not for tuition."). *See Alexander*, 2021 WL 9038526, at *4(describing defendant university's cancellation of in-person classes without corresponding refunds or abatements of fees as "common undisputed facts" underlying breach of contract and unjust enrichment claims); Ex. 1 (Duerk Dep.) at 188:12-19 ("Q. So when the university decided to switch from the in-person format to the remote and online format, that transition affected all students at the university equally, correct? ... A. I believe all University of Miami students were given the opportunity to go to online courses only."). Thus, Plaintiffs' breach of contract claim will turn on whether UM was contractually bound to provide them with in-person classes and experiences and whether it breached such a contract. Likewise, Plaintiffs' alternative unjust enrichment claim will turn on whether it was unjust for UM to retain the entirety of their tuition and fee payments even though it failed to provide in-person classes for the entire Spring 2020 semester. These questions apply to every class member. If UM was contractually bound to provide in-person classes to Plaintiffs, it

11

was also contractually bound to provide in-person classes to the rest of the class because the same contract applies. If UM breached its agreement with Plaintiffs, it breached its agreement with all other class members. Likewise, if it was unjust for UM to retain all of Plaintiffs' tuition and fees, it was unjust for UM to do so with the other class members as well because the circumstances are indistinguishable. In other words, UM engaged in standardized conduct and  the same central questions are common for both Plaintiffs and approximately 16,000 putative class members.

## IV.      Typicality is satisfied because Plaintiffs' interests align with class members' interests.

"Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza*, 273 F.3d at 1346. "This requirement serves one simple purpose: to assure that the named representatives' interests are aligned with those of the class." *Belin*, 337 F.R.D. at 557 (citation omitted). "Class plaintiffs' claims need not be substantially identical to those of the class members" as "[t]ypicality can exist despite substantial factual differences ... when there is a strong similarity of legal theories." *Id.* As the Supreme Court explained in *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982):

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Id.* at 157, n.13.

Even though typicality does not require identical claims, here, Plaintiffs' claims *are* identical in all material requests to the other putative class members' claims. Plaintiffs were both registered students at UM during the 2020 Spring Semester. Dixon Decl. ¶ 4; Dimitryuk Decl. ¶ 4. Plaintiffs paid approximately $26,000 in tuition and fees to attend in-person classes during the

2020 Spring Semester. *Id.* But after March 13, 2020, UM provided them and other members of the class with only online classes. Am. Ans. ¶¶ 128–129; Dixon Decl. ¶ 9; Dimitryuk Decl. ¶ 9. Accordingly, Plaintiffs possess the same interest, and suffered the same injury, as all other class members because none received the benefit of their bargain—a semester of in-person instruction and experiences. Ultimately, Plaintiffs and the other class members contracted with Defendant for access for the entire Spring 2020 semester to the University of Miami's campus, which would include in-person, on-campus instruction, educational services, and the use of facilities in exchange for Plaintiffs and the class's tuition and fee payments. *See* ECF 49 at ¶¶ 2, 35; Exs. 14–19, 22. Plaintiffs' claims are typical. *See Alexander*, 2021 WL 9038526, at *5 (finding typicality satisfied where "Plaintiffs and Class members all suffered the same injury: not receiving the services and access to facilities for which they paid" where "FIU's uniform practice of shutting down its campuses and on-campus services to all students during the semesters in 2020 affected Plaintiffs and all Class Members") (quotation and citation omitted).

**V. Plaintiffs will fairly and adequately represent the class because they have no conflicts of interest, will continue to prosecute the action, and are represented by experienced counsel.**

The adequacy inquiry serves to uncover conflicts of interest between the named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "In the Eleventh Circuit, Rule 23(a)'s adequacy requirement compels the Court to assess '(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action.'" *Belin*, 337 F.R.D. at 558 (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). "In other words, class certification is precluded 'where the ... interests and objectives of the named representatives differ significantly from the ... interests and objectives of unnamed class members.'" *Id.* (quoting *Valley Drug*, 350 F.3d at 1190). "The adequate representation requirement [also] involves questions of

13

whether Plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation[.]" *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

Here, there exists no evidence that the named class representatives' interests are antagonistic to other class members' interests as the interests and objectives of unnamed class members do not differ significantly from Plaintiffs' interests and objectives. *Belin*, 337 F.R.D. at 558. Rather, Plaintiffs and class members have the *same* interest in obtaining compensation that will provide each with the benefit of their bargain. Moreover, Plaintiffs have demonstrated their adequacy and commitment to vigorously prosecuting this action by performing their duties as putative class representatives. In that regard, Plaintiffs have both regularly communicated with their counsel about the progress of this case, reviewed documents filed on their behalf to remain updated on the status, and they have searched for and collected relevant documents to this action. Dixon Decl. ¶ 12; Dimitryuk Decl. ¶ 12. In addition, Plaintiffs have been deposed. Ex. 11 (Dimitryuk Notice of Deposition); Exhibit 21 (Dixon Notice of Deposition).

Plaintiffs are also represented by class counsel with extensive experience litigating complex cases, including class action claims.[4] Ex. 6 (Bursor & Fisher, P.A. Firm Resume); Ex. 8 (Hagens Berman Sobol Shapiro LLP Firm Resume); Ex. 7 (Poulin Willey & Anastopoulo, LLC Resume). Collectively, Plaintiffs' counsel have been appointed class counsel in hundreds of cases in both federal and state courts, and have obtained billions in recoveries. They have also been vigorously prosecuting this action through discovery and litigating Defendant's motions to dismiss, moved to compel as to deficient discovery responses, have retained and advanced costs for experts, conducted substantial research regarding the legal issues, and thoroughly investigated

---

[4] On August 18, 2020, this Court appointed the same counsel Plaintiffs wish to have appointed as co-lead interim class counsel. *See* ECF 48.

the factual issues. They have no conflicts of interest and will prosecute this action vigorously on behalf of Plaintiffs and the class. Plaintiffs' counsel are well-funded law firms that are willing and able to bear the costs associated with maintaining this class action.

**VI.**   **The requirements of Rule 23(b) are satisfied because common questions of law and fact predominate and a class action is superior to individual, piecemeal resolution.**

Under Rule 23(b)(3) a class may be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) also sets forth factors for courts to consider in evaluating predominance and superiority. These non-exclusive considerations are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation about the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3); *Belin*, 337 F.R.D. at 558. Plaintiffs' claims must "depend on a common contention" the validity of which is "capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. *See Belin*, 337 F.R.D. at 558 ("Rule 23(b)(3) requires findings both (1) that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.") (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1277 (11th Cir. 2009)) (internal quotation omitted).

15

A.    **Common issues predominate given UM's common course of conduct to its student body and identical legal claims, which do not vary from class member to class member.**

To satisfy the predominance requirement, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (quotations and citation omitted). "The predominance inquiry focuses on the legal or factual questions that qualify each class member's case as a genuine controversy, and is far more demanding than Rule 23(a)'s commonality requirement." *Id.* To determine whether common questions predominate, the Court must examine the cause of action asserted on behalf of the putative class and consider what value the resolution of the class-wide issue will have absent the required notice. *Id.* at 1234.

Here, common questions predominate for each claim asserted. "Under Florida law, the elements of breach of contract are: (1) the existence of a contract, (2) a breach thereof, and (3) damages flowing from the breach." *Wistar v. Raymond James Fin. Servs., Inc.*, 365 F. Supp. 3d 1266, 1269 (S.D. Fla. 2018). Each element presents a common question for the class and they each have a common answer. As to the existence of a contract, Florida law is clear that a relationship between student and university sounds in contract. *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008) (noting the legal relationship between a private university and a student is "solely contractual in character."). The specific terms of the contract can be found in "the university's catalogs, student manuals, student catalogs, and other policies and procedures[,]" which set forth the contractual agreement between the student and the university. *See Villard v. Capella Univ.* 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21, 2017), *report and recommendations adopted*, 2018 WL 2011433 (M.D. Fla. Apr. 30, 2018). Here, the same handbooks, catalogs, policies, and brochures will provide the basis for any contractual terms across the board class-

wide. Similarly, these documents, along with UM's history of providing in-person classes, constitute evidence of an implied contract. Thus, whether UM and class members were parties to a contract, and whether that contract contained a requirement that UM would provide in-person classes, are questions that can be answered for all class members in one fell swoop. Accordingly—whether Defendant breached its contracts with Plaintiffs and the members of the class by failing to provide them with an in-person, on-campus instruction, educational services, and use of facilities after March 13, 2020—clearly predominates over any individual issues that may exist. Moreover, there exists a clear "common nucleus of operative fact," namely, that all class members had the same standardized documents and representations by Defendant throughout the application, acceptance, enrollment, registration, and payment processes. *See* Exs. 14–19, 22; Ex. 1 (Duerk Dep.) at 95:23–96:2 ("Q. Doctor, fair to say that as a part of the university's marketing, or you know, representing itself to students, it often emphasizes its location in Miami as a benefit of enrollment, correct? A. That is correct.").

Likewise, performance by the class can be established with Defendant's records: each class member performed by paying tuition and/or fees for the 2020 Spring Semester.[5] And Defendant breached for all class members: in-person classes were terminated for the entire university starting after March 13, 2020. This breach resulted in an injury for all class members: none of the students at UM received the full semester of in-person classes they paid for. Instead, they received online classes which, as Plaintiffs' expert will testify (explained further below), was worth far less than bargained for in-person classes. No individual issues are involved in these inquiries.

Plaintiffs' alternative unjust enrichment claim is equally susceptible to class-wide treatment. To state a claim for unjust enrichment, Plaintiffs must allege "a benefit conferred upon

---

[5] *See* ECF No. 12 at 16.

a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). Here, each class member conferred a benefit upon Defendant by paying tuition and/or fees for the 2020 Spring semester, and Defendant knew about those payments. Every class member's unjust enrichment claim will then turn on a single question: was it unjust for UM to keep the full tuition and fee payments given that it did not provide the in-person classes for which the parties bargained. Litigation of this issue will turn on common evidence, with no individual inquiry and can be answered class-wide. The class members are similarly situated and the injustice of Defendant retaining their tuition and fee payments can be adjudicated in one fell swoop. *Alexander*, 2021 WL 9038526, at *6 (finding common issues predominated where, like here, the plaintiffs' claims were based on the university's failure to provide students with the services paid for as the case "poses the same basic legal question for all class members").

Plaintiffs' expert, Dr. Charles Cowan, has also set out the method he will use to measure damages class-wide. In his report, Dr. Cowan details the methodology used to calculate damages class-wide, which "results from comparing the objective value of the education services that students contracted with U-Miami for the whole Spring 2020 semester against the objective value of the education services they actually received." Ex. 20 (Dr. Cowan Report) at ¶ 18. The methodology used includes a calculation for "the market tuition rate for the education services that U-Miami provided with all courses delivered on-line" "based on the observed pricing of on-line undergraduate programs on behalf of similarly situated schools." *Id.* at ¶¶ 24, 48." Using this methodology, Dr. Cowan provides fee- and tuition-related damages calculations for both Plaintiffs. *Id.* at ¶¶ 51, 56. Although Dr. Cowan does not presently have all of the information necessary to

calculate damages specific to each class member, his methodology sufficiently accounts for any differences between students, including the number of credit hours for which each individual student was enrolled. *Id*. at ¶ 25. Thus, damages can easily be calculated utilizing the student account and enrollment records for each student—records easily accessible by UM. *See, e.g.*, *Herman v. Seaworld Parks & Ent., Inc.*, 320 F.R.D. 271, 296 (M.D. Fla. 2017) ("The fact that individualized damages issues will need to be resolved is not disqualifying of class certification); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (citing *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001)) ("Although calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue."). Dr. Cowan will provide a detailed set of computations setting forth the proposed Class's damages after completing all fact discovery. However, Plaintiffs' proposed methodology for calculating damages presents an objective and quantifiable methodology such that class answers predominate over individual ones.

### B.   Class action is far superior to thousands of individual actions.

"The superiority inquiry focuses on whether there is a better method of handling the controversy than through the class action mechanism." *Belin*, 337 F.R.D. at 559 (citation and quotation omitted). "[T]he conclusion that common issues of law and fact predominate … strongly militates in favor of a class action as a superior means of litigating." *Id.* Here, there is no better method available for the adjudication of the claims which might be brought by each individual class member. As set forth in Plaintiffs' consolidated complaint, there are thousands of students enrolled at UM's campus. Litigating this action as a class action is more practical and efficient than to litigate thousands of individual cases for amounts that would simply not justify lengthy and complex prosecutions. *Alexander*, 2021 WL 9038526, at *7 (finding superiority met "[w]here, like here, the absent class members' individual claims are too small to expect them to be adjudicated

separately," such that "the added efficiency of a class action is at its greatest" and that "[a]bsent a class-wide resolution, it is unlikely that any significant number of class members would obtain redress") (citation and quotation omitted). In addition, Plaintiffs are unaware of—and UM has not disclosed—any other action seeking the same relief on behalf of the same class. Moreover, there is absolutely no reason it would be undesirable to concentrate this action before this Court, as UM is located in this District. Last, there are absolutely no difficulties likely to be encountered in the management of a class action because it involves straightforward claims for breach of contract and unjust enrichment.

### **CONCLUSION**

The proposed classes meet all the requirements of Rule 23 to be certified as a class. The classes meet the tests for numerosity, commonality, and typicality. The class representatives are adequate and hired attorneys with significant experience who will collectively and vigorously litigate this action on behalf of class members. Further, in this case virtually all evidence and claims are the same for all class members. Questions of law and fact predominate over individual questions. Finally, a class action is superior for the claims raised as opposed to thousands of individual actions involving the same discovery and evidence. The proposed classes should be certified, and Plaintiffs' counsel should be reappointed as class counsel under Rule 23(g). Plaintiffs further request that the Court grant them all such other relief as it deems necessary and appropriate.

Dated: July 15, 2022                    Respectfully submitted,

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

[*signature block on following page]

20

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (FBN: 1018272)
701 Brickell Ave, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

Roy T. Willey IV (*Pro Hac Vice*)
Eric M. Poulin (*Pro Hac Vice*)
Blake G. Abbott (*Pro Hac Vice*)
**POULIN WILLEY & ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
T: (843) 614-8888
roy@akinlawfirm.com
eric@akinlawfirm.com
blake@akinlawfirm.com

Steve W. Berman (*Pro Hac Vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice*)
Whitney K. Siehl (*Pro Hac Vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
T: (708) 628-4949
F: (708) 628-4950
dank@hbsslaw.com
whitneys@hbsslaw.com

*Co-Lead Interim Class Counsel*

21

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 15, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>*/s/ Sarah N. Westcot*</u>
Sarah N. Westcot